IN THE MATTER OF JORDAN L. RING.

Suffolk. January 8, 1998. - April 8, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, MARSHALL, & IRELAND, JJ.

*Attorney at Law,* Disciplinary proceeding, Suspension. *Board of Bar Overseers.*

The Board of Bar Overseers was properly a party to an appeal from a judg-
ment entered by a single justice in a bar discipline proceeding. [190]
This court concluded that suspension for a definite period from the practice of
law was the appropriate sanction for an attorney's outrageous conduct in
the treatment of his wife, who had filed for divorce, and for his knowing
and substantial repeated contempt of court in the divorce proceedings:
further, the duration of the sanction, but not the severity, was mitigated by
a medical report submitted on behalf of the attorney. [190-192]

INFORMATION filed in the Supreme Judicial Court for the county
of Suffolk on August 13, 1996.

The case was heard by *Greaney,* J.

*Michael Fredrickson,* General Counsel (*Roger Geller,* As-
sistant Bar Counsel, with him).

*Paul R. Sugarman* (*James S. Bolan* with him) for the
respondent.

WILKINS, C.J. This bar discipline proceeding has produced
considerable disagreement as to the appropriate level of
discipline to impose on the lawyer. The lawyer violated rules of
professional discipline by repeatedly and wilfully disobeying
court orders entered in a divorce action commenced by his wife,
conduct that would normally call for the imposition of
substantial discipline. On the other hand, the lawyer, who has
been a member of the bar since 1960 and has no history of
discipline, was emotionally traumatized by the breakup of his
marriage, with the result that his judgment was impaired. He
engaged in self-destructive conduct, but only with respect to his
wife and the divorce process.

In October, 1995, the lawyer and bar counsel stipulated to the
facts. In February, 1992, the lawyer's wife filed a complaint for

divorce. The day after the lawyer received notice of the action, he transferred $406,000 in marital assets to an account in his name alone in Saint Maarten in the Netherlands Antilles. On March 13, 1992, a judge of the Probate and Family Court ordered the lawyer to pay $300 each week for spousal support and to pay other expenses, such as mortgage obligations and real estate taxes. Although the lawyer had notice of this order and had the ability to pay, he did not comply. On April 14, 1992, another judge ordered the lawyer to pay the wife counsel fees of $1,000. Again, aware of the order and able to pay, the lawyer did not obey the court order.

On April 22, a hearing was held on his wife's complaint for contempt for violation of the March 13 support order. The lawyer did not appear, although his attorney did. The lawyer was adjudicated in contempt and ordered to pay $1,800 in arrearages on his support obligation, approximately $19,000 in household bills, and approximately $5,000 for attorney's fees his wife incurred in prosecuting the contempt complaint. A warrant was issued for the lawyer's arrest.

The pattern continued. On May 20, the lawyer was ordered to pay $50,000 within fourteen days to his wife for counsel fees. He refused to obey that order, although he had the ability to do so. On June 1, two judgments for contempt were entered: one ordered the payment on or before June 22 of the $1,000 originally ordered for counsel fees and the other ordered the payment of the amounts set forth in the April 22 judgment of contempt. The lawyer's obduracy persisted. He did not pay his wife's counsel fees. He did not obey the support orders. On June 23, a judge ordered the lawyer to use funds in the Saint Maarten bank account, if he was otherwise unable to make ordered payments. He wilfully failed to do so. On July 8, the lawyer failed to appear in court on two complaints of contempt. A warrant was issued for his arrest, and the lawyer was ordered not to leave the Commonwealth. The lawyer knew of the warrant for his arrest and that a further hearing on a contempt complaint was scheduled for July 17, but he did not appear. On that day a new judgment of contempt was entered, and a new warrant for his arrest was issued.

On August 11, in response to the wife's petition for a spendthrift guardianship of the lawyer, pursuant to G. L. c. 201, § 8, and after a hearing, a judge appointed a temporary guardian of the lawyer and instructed her to collect and preserve the

assets of the lawyer's estate. Two weeks later the judge appointed the guardian as trustee of the real estate trust that owned the marital domicil and an adjacent lot. On December 15, a judge ordered the lawyer to transfer $400,000 that he had removed from Massachusetts to an escrow account maintained by the guardian. The lawyer refused to do so or to cooperate with the guardian in doing so. On January 29, 1993, the judge held the lawyer in contempt for failure to transfer the funds. On May 10, the spendthrift guardianship was made permanent.

On January 7, 1994, the lawyer was arrested, and he was ordered to be incarcerated until the funds were transferred from Saint Maarten. The lawyer then cooperated. Later that month a judge issued a consolidated judgment of contempt and authorized the guardian to pay the wife $140,000. The lawyer continued to fail to make support payments to his wife. On June 15, 1994, the lawyer was again found to be in contempt and ordered to be incarcerated until he complied with court orders. The lawyer took steps to comply with the order and was released later that day. On September 27, 1994, a judgment nisi of divorce was entered and a separation agreement entered into.

The lawyer stipulated with bar counsel that "[b]y his conduct in repeatedly disobeying court orders entered in his divorce action, resulting in at least seven separate adjudications of contempt, the issuance of three separate warrants for his arrest, and two brief incarcerations, the [lawyer] violated [S.J.C. Rule 3:07,] Canon One, Disciplinary Rules 1-102 (A) (5) and (6)[, as appearing in 382 Mass. 769 (1981)] . . . ." The lawyer had acted in part as his own counsel. He agreed that his conduct also violated S.J.C. Rule 3:07, Canon 7, DR 7-102 (A) (1), as appearing in 382 Mass. 785 (1981), which forbids conduct that a lawyer knows or obviously serves "merely to harass or maliciously injure another."

The lawyer and bar counsel stipulated further as follows: "The [lawyer] was emotionally and physically traumatized by the break-up of his 35-year marriage. In consequence of a severe depression, [his] judgment was impaired, and he engaged in a pattern of self-destructive conduct marked by hostility to his wife and to the divorce process. The [lawyer] sought and received extensive treatment for his emotional and physical condition. Through this treatment, [he] was finally able to accept the fact of his divorce and to achieve a mutually acceptable property settlement with his wife." The lawyer and bar counsel

stipulated and recommended that the lawyer should be publicly reprimanded for his misconduct.

Within three weeks of the signing of the stipulation, the Board of Bar Overseers (board) considered what position it should take. Ten members attended the board meeting. They were far from one mind. A motion to recommend indefinite suspension failed (four to six), as did a motion to recommend a three-year suspension (four to six). A motion to recommend a two-year suspension then failed in a tie vote, as did a motion to recommend an eighteen-month suspension. Finally, a motion passed, based on the lawyer's "repetitive and egregious disdain for the authority of the court," to recommend a one-year suspension, six members voting in favor and four members preferring an indefinite suspension. Because the board rejected the stipulation of bar counsel and the lawyer concerning discipline, the board treated its decision as preliminary and gave each the opportunity to respond.

The lawyer moved for reconsideration on the basis of "new and substantial evidence and information in mitigation." Bar counsel and the lawyer again urged the board to accept their joint recommendation for a public reprimand. On April 8, 1996, the board revisited the issue. Once more, four motions failed before one carried. A motion to accept the stipulation failed (three to six). With four members voting for and five against, motions failed to recommend (1) a one-year suspension, (2) a nine-month suspension, and (3) a six-month suspension. Finally, a vote passed (six to three) to recommend a three-month suspension. The board correctly noted, in an accompanying memorandum, that the lawyer had not submitted any "new and substantial evidence and information" in mitigation.

The lawyer, through counsel, then submitted a sworn statement of a psychiatrist given before a stenographer. According to counsel's submission, the statement "sets forth in detail the psychiatric condition under which the [lawyer] was suffering during the critical periods of time at issue in this matter, relates the extreme pressures and factors which caused the [lawyer] to act in the way he did, renders the psychiatrist's opinion that the acts of the [lawyer] were the result of that psychiatric condition and that those acts, which were wholly confined to the [lawyer's] personal life, did not and would not occur in his professional life." The board considered the material submitted, declined to reopen the proceedings, and, on August 13, 1996,

filed an information setting forth the board's recommendation of a three-month suspension.

A single justice of this court concluded that the lawyer should be relieved of the stipulation to the extent that the sworn statement of the lawyer's psychiatrist could be considered. Counsel for the board indicated that there was no need to remand the matter to the board further to consider the psychiatrist's statement. The single justice ruled that a public censure should be entered, "[b]ased on the attorney's long record of unblemished practice, the diagnosis by [the doctor] of the attorney's illness and the doctor's opinion that the illness caused the misconduct . . . and the indication that the illness has abated and no longer will affect the attorney in his practice of law."[1] A judgment was entered accordingly, and the board appealed.

1. The lawyer challenges the right of the board to appeal from the judgment entered by the single justice. The board has appealed in other cases without objection. See *Matter of Chambers*, 421 Mass. 256 (1995); *Matter of Deragon*, 398 Mass. 127 (1986); *Matter of the Discipline of an Attorney*, 392 Mass. 827 (1984); *Matter of Alter*, 389 Mass. 153 (1983). In all but the *Chambers* case, bar counsel joined in the appeal, and the issue of the board's right to appeal may not have been worth raising.

The board filed the information. It is a party to the proceeding. Other disciplinary boards participate fully in appeals. See, e.g., *Hellman* v. *Board of Registration in Medicine*, 404 Mass. 800 (1989) (appeal by board from decision of single justice). It is common for administrative agencies in the executive department to be full parties in appeals from their decisions. We decline, at this late date especially, to deny to the board access to the views of the full court on appeal from a judgment of a single justice.

2. The lawyer complains that the board did not consider the deposition of his psychiatrist. The deposition did not exist at the time the lawyer stipulated to all the facts, although the facts and opinions set forth in the deposition were presumably then available. The deposition was not taken until June, 1996, after the board had voted, on reconsideration, to recommend a three-

---

[1] A public censure no longer exists as a disciplinary option. It has been replaced by the public reprimand. S.J.C. Rule 4:01, § 4, as appearing in 415 Mass. 1302 (1993). Public reprimands are administered by the board, and not the court. S.J.C. Rule 4:01, § 5 (3) (e), as amended, 415 Mass. 1303 (1993).

month suspension. It is no fault of the board that the deposition was presented to it as late as it was. The lawyer's reluctance to disclose his condition more than he thought necessary is understandable, but the board is hardly at fault if the medical information came to it late.[2] In any event, the deposition is before us, and it is we who must make the decision concerning the level of discipline to impose.

3. We have considered the opinion of the psychiatrist whose qualifications are unquestioned. To protect the lawyer's privacy, we do not recite all the doctor's findings, but we must set forth sufficient facts to demonstrate that mitigation is warranted in the discipline to be imposed. The psychiatrist first saw the lawyer in 1989. The lawyer was then suffering from major depression which did not adversely affect his ability to practice law. When the lawyer's wife left him in February, 1992, he became upset, distraught, and depressed, and he engaged in dissociative thinking. He was preoccupied with feelings of helplessness, worthlessness, and even suicide. The lawyer was extremely disturbed by the divorce proceedings. He hoped for a reconciliation and did not come to terms with the reality of the divorce.

The psychiatrist viewed the lawyer's conduct concerning the divorce proceedings as defiant and self-defeating. The lawyer was depressed, felt a sense of being a failure, and was so anxious about it "that he didn't have the ability to use his usual judgment in putting together his behavior." The lawyer's ability to control his conduct and to understand his actions was altered by his illness. After the divorce became a clear certainty to the lawyer, his level of anxiety decreased and his dissociative thinking was reduced. The lawyer's condition thereafter steadily improved and he has dealt with his life and actions appropriately.

4. The board argues on appeal that the "flagrance, profusion, intensity, and duration" of the lawyer's misconduct far exceeds the contempt of court committed by lawyers in other cases. It grants that mitigating evidence provides a basis for reducing the length of any suspension, but not for imposing only a public reprimand.

Viewed objectively and thus disregarding his illness, the lawyer's outrageous conduct in his treatment of his wife and in

---

[2] The lawyer could have sought a protective order in connection with the filing of confidential information. See Rules of the Board of Bar Overseers § 3.22 (c) (1997).

contemptuous disregard of court orders is indefensible. His willingness to comply with orders only after incarceration suggests a knowing self-interest. The attorney's recalcitrance concerned money; it was not, for example, an emotional reaction to an order concerning custody of a child. His conduct repeatedly flouted the orders of judges of the Commonwealth and caused harm, at least financially, to his wife. We may infer that he intended to cause his wife distress. Nothing in the psychiatrist's sworn statement suggests otherwise. The appropriate discipline for such knowing violations of court orders, violations which caused injury to a party to the litigation or interfered with a legal proceeding, is a suspension. See ABA Standards for Imposing Lawyer Sanctions § 6.22 (1992); *Matter of Budnick*, 466 N.E.2d 36, 37 (Ind. 1984).[3] The lawyer's argument that his actions involved a private matter is patently without merit. His misconduct in large part concerned his disobedience of court orders.

The lawyer relies on his psychiatrist's statement as grounds to mitigate the level of discipline to something less than a suspension from the practice of law. His conduct was selectively directed toward denying his wife financial assistance. The psychiatrist did not indicate that the lawyer did not know that his conduct was wrong or that he lacked the capacity to comply with court orders. The lawyer, of course, knew that what he was doing was wrong but, in his distress over the divorce proceedings, he did not care. A suspension of some sort is called for in order to demonstrate to the public and the bar that substantial, repeated contempt of court of the character involved in this proceeding is serious and requires stronger discipline than a public reprimand. See *Matter of Finnerty*, 418 Mass. 821, 829-830 (1994).

5. The appropriate level of discipline to impose in this case

[3]The *Budnick* case involved a lawyer who engaged in contemptuous conduct in circumstances similar to those in this proceeding. The Indiana court imposed a suspension of not less than three years, saying, "[t]he foregoing findings depict an attorney who has repeatedly and consistently disobeyed the orders of the courts of this State. The judicial authority vested in our courts must be recognized and enforced or our judicial system will cease to function. The Respondent has defied this authority; he has subverted the judicial process and has held himself above the law. Such conduct is always contemptuous; it is even more reprehensible when the perpetrator is a member of the Bar and an integral part of the judicial system." *Matter of Budnick*, 466 N.E.2d 36, 37 (Ind. 1984).

presents a problem. The misconduct was substantial and repetitive. On the other hand, bar counsel did not propose a suspension, and the board has not pressed for more than a three-month suspension. Although we would have proposed a longer suspension if the issue had come to us without the background recited in this opinion, we are content to direct that the single justice enter a judgment suspending the lawyer for a period of three months.

*So ordered.*