## In the Matter of Paul J. Grella.

Suffolk. September 4, 2002. - October 30, 2002.

Present: Marshall, C.J., Greaney, Spina, Cowin, & Sosman, JJ.

*Attorney at Law,* Disciplinary proceeding, Suspension.

This court concluded that the appropriate sanction to be imposed on an attorney convicted of a misdemeanor arising from his violent assault on his estranged wife was suspension of the attorney from the practice of law for two months. [51-56]

Information filed in the Supreme Judicial Court for the county of Suffolk on June 8, 2001.

The case was heard by *Cordy*, J.

*Nancy E. Kaufman*, Assistant Bar Counsel.

Marshall, C.J. At issue in this case is the appropriate disciplinary sanction for a member of the bar convicted of a misdemeanor arising from his violent assault on his estranged wife. The matter commenced on May 16, 2000, when bar counsel notified the county court that the respondent, Paul J. Grella, had been convicted of assault and battery.[1] A single justice remanded the matter to the Board of Bar Overseers (board) for further proceedings, whereupon bar counsel filed a petition for discipline alleging that the respondent had violated Mass. R. Prof. C. 8.4 (b) and (h), 426 Mass. 1429 (1998).[2]

---

[1]On June 18, 1999, the respondent pleaded guilty to a misdemeanor, a single count of assault and battery in violation of G. L. c. 265, § 13A. He was sentenced by a judge in the Superior Court to five years' supervised probation, with the conditions that he abstain from alcohol; undergo psychological, batterer's, and sex offender evaluation and treatment as deemed necessary by the probation department; remain gainfully employed; obey any restraining orders issued under G. L. c. 209A; and stay away from members of the victim's family, other than their children in common.

[2]Rule 8.4 of the Massachusetts Rules of Professional Conduct, 426 Mass. 1429 (1998), provides in pertinent part: "It is professional misconduct for a lawyer to: . . . (b) commit a criminal act that reflects adversely on the

Hearings were conducted in November, 2000, at the conclusion of which the hearing committee of the board recommended that the respondent be suspended from the practice of law for two months. In May, 2001, the board adopted the hearing committee's findings and recommendations, and filed an information to that effect. The single justice did not accept the board's recommendation and ordered that the respondent be suspended from the practice of law for six months; he suspended the execution of the discipline for three years provided that the respondent abstain from alcohol and abide by the rules of the profession. Bar counsel appealed.

We give the matter de novo review, *Matter of Kennedy*, 428 Mass. 156, 156 (1998), and conclude that the appropriate sanction in this case is, as the board recommended, suspension of the respondent from the practice of law for two months.

1. *Facts.* The relevant facts found by the hearing committee and adopted by the board may be succinctly stated as follows. The respondent received his bachelor's degree from the University of Massachusetts in 1978, and a law degree from City University of New York Law School in 1987. The respondent married the victim while attending law school; after his graduation, the couple moved to Massachusetts. After working as a law clerk for a Bankruptcy Court judge in Rhode Island, the respondent was admitted to the Massachusetts bar in 1989. Since that time, he has practiced law in Massachusetts, predominantly as a sole practitioner.

In 1997, the respondent and his wife sought marital counselling, during the course of which she made certain allegations concerning the respondent's conduct toward his then ten year old daughter, one of their four children. The counsellor reported the allegation to the Department of Social Services, which later dismissed the claim, finding no reasonable cause to support it. The marital counselling proved unsuccessful, and the respondent and his wife separated in May, 1998. They were divorced in 1999.

The events that gave rise to the respondent's criminal convic-

lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects . . . (h) engage in any other conduct that adversely reflects on his or her fitness to practice law."

tion occurred on July 29, 1998. Beginning at 12:50 A.M., the respondent repeatedly telephoned his estranged wife, leaving messages on her answering machine to the effect that he wanted to come over to see her.[3] His wife, who had just returned home from work, did not answer the telephone, but she heard the recorded messages. She eventually turned off the telephone ringers in her home and fell asleep, but was awakened when she heard the respondent calling her name. He was in her bedroom. She asked the respondent to leave. He refused, pushed her on the bed, lay on top of her, and put his hand over her mouth. The victim, feeling that she was unable to breathe, finally pushed him away, and she fell to the floor. The respondent fell on top of her, screaming at her while slapping her and pulling her hair. The respondent pulled at the victim's clothes, ripping off two buttons. He pushed her back down on the bed. The victim begged him to stop. Fearing for her life, she scratched the respondent's cheek in the hope that someone would notice if something happened to her. She told the defendant "not to do anything because of the children." The assault continued for approximately four hours, with the respondent refusing to let the victim leave her bedroom. At 5:45 A.M., the respondent finally left the house. The victim immediately dialed 911 and reported that her husband had attacked her and had just left the house. She told the police that the respondent had pulled her hair and slapped her, that her lip was bloody, and that the respondent had threatened to harm her if she telephoned the police. The police later observed and photographed the wife's injuries.

2. *The decision of the board.* The hearing committee concluded that the respondent's guilty plea constituted a conviction within the meaning of S.J.C. Rule 4:01, § 12 (1), as appearing in 425 Mass. 1313 (1997),[4] and that the conviction was conclusive evidence that the respondent had committed an assault and battery in violation of G. L. c. 265, § 13A. See S.J.C.

---

[3]The respondent told the hearing committee that, among other things, he wanted to speak to his wife about the allegations she had made during counselling about his relationship with his daughter. The hearing committee did not credit his testimony.

[4]Supreme Judicial Court Rule 4:01, § 12 (1), as appearing in 425 Mass. 1313 (1997), defines a conviction as "any guilty verdict or finding of guilt and any admission to or finding of sufficient facts and any plea of guilty or

Rule 4:01, § 12 (2), as appearing in 425 Mass. 1313 (1997).[5] The hearing committee noted that the respondent's conviction was not defined as a "serious crime" within the meaning of S.J.C. Rule 4:01, § 12 (3), as appearing in 425 Mass. 1313 (1997),[6] but concluded that S.J.C. Rule 4:01, § 12 (5), as appearing in 425 Mass. 1313 (1997), specifically allows the court to refer a matter involving a crime "not constituting a serious crime" to the board for appropriate action.

The hearing committee concluded that the respondent's commission of assault and battery on his estranged wife constituted a violation of Mass. R. Prof. C. 8.4 (b) and (h). See note 2, *supra*. It determined that, when an attorney commits an act of domestic violence, a discipline of suspension is generally warranted regardless whether the attorney is later convicted of a felony or a misdemeanor. It recommended that the respondent in this case be suspended from the practice of law for two months. In making its recommendation, the hearing committee considered several facts offered by the respondent in mitigation, as well as those offered by bar counsel in aggravation. The hearing committee rejected each of the respondent's claims.[7] Of

nolo contendere which has been accepted by the court, whether or not sentence has been imposed."

[5]Supreme Judicial Court Rule 4:01, § 12 (2), as appearing in 425 Mass. 1313 (1997), provides that "[a] conviction of a lawyer for any crime shall be conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against that lawyer based upon the conviction."

[6]Supreme Judicial Court Rule 4:01, § 12 (3), as appearing in 425 Mass. 1313 (1997), defines a serious crime as "(a) any felony, and (b) any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime, includes interference with the administration of justice, false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft or an attempt or a conspiracy, or solicitation of another, to commit a 'serious crime.' "

[7]The respondent claimed that he had overcome substantial psychological and familial difficulties in his life, warranting a lesser sanction. There was no evidence that any such difficulties were causally related to the assault, and the hearing committee rejected his claim. The hearing committee also rejected the respondent's claim that his conduct was causally related to the allegations made by his wife regarding their daughter. See note 3, *supra*. The respondent argued that his sanction should be lessened because he was going through an emotional and stressful divorce when he committed the abuse. The hearing committee did not accept that "the stress of marital problems should in any way excuse or ameliorate domestic violence." The hearing committee

the three claims made by bar counsel, the hearing committee agreed that the respondent's failure to show remorse for his conduct constituted a factor in aggravation.[8]

The board adopted the hearing committee's conclusion and recommendations.

3. *Appropriate discipline.* Bar counsel argues that the sanction imposed by the single justice is "an inadequate sanction for the respondent's assault on his wife." We agree. Our standard for reviewing a sanction imposed by the single justice is whether it is markedly disparate from judgments in comparable cases. See *Matter of Finn*, 433 Mass. 418, 422-423 (2001); *Matter of Alter*, 389 Mass. 153, 156 (1983). We are also mindful that the board's recommendation is entitled to substantial deference, *Matter of Tobin*, 417 Mass. 81, 88 (1994), and that, in determining the appropriate sanction, the "primary factor" for our consideration is "the effect upon, and perception of, the public and the bar." *Matter of Concemi*, 422 Mass. 326, 329 (1996), quoting *Matter of McInerney*, 389 Mass. 528, 535 (1983). *Matter of Alter, supra.* Applying these principles, we conclude that a two-month suspension from the practice of law is the appropriate sanction.

We have little doubt that the respondent's sustained and violent attack on his estranged wife adversely reflects on his fitness as a lawyer. See *Bar Counsel* v. *Doe*, 16 Mass. Att'y Discipline Rep. 441, 445 (2000) (attorney's misdemeanor assault and battery constituted violation of rule 8.4 [b] and [h]).[9] Comment [1] to Mass. R. Prof. C. 8.4, 426 Mass. 1430 (1998),

---

considered that the respondent had provided a substantial amount of pro bono representation over the course of his career, but concluded that the provision of such services was not a mitigating factor. Finally, the respondent argued that his lack of any prior disciplinary record, his good reputation in the community, and his participation in civic affairs warranted him a mitigated sanction. The hearing committee found all of these factors to be "typical" circumstances, having little impact on the level of discipline to be imposed.

[8]The hearing committee rejected bar counsel's other assertions that the respondent's failure to make court-ordered child support payments and his lack of candor in testifying should weigh against him.

[9]Other States also have concluded that an attorney's violent conduct reflected negatively on his or her fitness as a lawyer. See, e.g., *People* v. *Musick*, 960 P.2d 89, 92 (Colo. 1998) (attorney's acts of violence had bearing on his fitness to practice law because they were "malum per se"); *Matter of*

provides, in pertinent part: "Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence . . . are in that category."[10] See S.J.C. Rule 4:01, § 3, as amended, 430 Mass. 1314 (1999) ("Each act . . . by a lawyer . . . which violates any of the Massachusetts Rules of Professional Conduct . . . shall be grounds for appropriate discipline even if the act or omission did not occur in the course of a lawyer-client relationship or in connection with proceedings in a court"). The essence of the conduct of a lawyer is to facilitate the resolution of conflicts without recourse to violence, for law is the alternative to violence. Engaging in violent conduct is antithetical to the privilege of practicing law, and such conduct generally will warrant suspension from the practice of law.

Had the respondent in this case broken into a stranger's home and committed the same acts of violence as he perpetrated on his wife, suspension would almost certainly have been warranted. See, e.g., *Matter of Goldberg*, 434 Mass. 1022, 1023 (2001) (recognizing that, in absence of unusual circumstances in mitigation, presumptive sanction for commission of felony assault and battery is suspension or disbarment); *Matter of Valerio*, 10 Mass. Att'y Discipline Rep. 281 (1994) (imposing one-year suspension for attorney convicted of threatening to commit crime and assault by means of dangerous weapon). Where the victim of violence is a family member, the violence "is not less but more of a threat" to the victim's basic sense of security. *Custody of Vaughn*, 422 Mass. 590, 596 (1996).

The "usual and presumptive" sanction for an attorney convicted of a felony is suspension or disbarment from the

---

*Magid*, 139 N.J. 449, 454-455 (1995) (prosecutor's act of domestic violence "was a serious violation" of N.J. R. Prof. C. 8.4).

[10]The ABA Standards for Imposing Lawyer Sanctions (1992) are to like accord. Standard 5.12 provides that "[s]uspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice." The commentary to standard 5.12, quoting the Model Rules of Professional Conduct, explains, in language mirroring that found in comment [1] to Mass. R. Prof. C. 8.4, 426 Mass. 1430 (1998), that "[o]ffenses involving violence" are part of the category of "offenses that indicate lack of those characteristics relevant to law practice."

practice of law. See *Matter of Concemi, supra* at 329-330. Because suspension is appropriate in this case, we need not consider whether, as the single justice suggested, there should be a presumptive sanction of suspension following a misdemeanor conviction in cases involving domestic violence. Whether a conviction is obtained and whether that conviction is of a felony or a misdemeanor is less important than the nature and extent of the assault itself. There may be many cases of serious domestic assault where no conviction is obtained. See, e.g., Hanna, No Right to Choose: Mandated Victim Participation in Domestic Violence Prosecutions, 109 Harv. L. Rev. 1849, 1860-1861 & n.40 (1996) (explaining that "victim noncooperation, reluctance, or outright refusal to proceed" are often cited as "major reasons" for lack of criminal prosecution in domestic violence cases).[11] Here, the assault was, as the single justice recognized, a "terrifying[] incident of violence." We also cannot ignore the harmful effects of a domestic abuser's actions on those whom the law commands us to protect. Here, although the hearing committee made no specific finding regarding the whereabouts of the respondent's children at the time of his assault on the victim, the record supports an inference that the children were present in the home and were potential witnesses to the respondent's violent attack.[12] See Weithorn, Protecting Children from Exposure to Domestic Violence: The Use and Abuse of Child Maltreatment Statutes, 53 Hastings L.J. 1, 5-8 & n.3-6, 11-16 (2001) (citing wealth of data that children are seriously harmed when subjected to domestic violence). See

[11]The disinclination of domestic violence victims to press charges is well documented. See, e.g., Wills, Domestic Violence: The Case for Aggressive Prosecution, 7 UCLA Women's L.J. 173, 176-177 (1997) ("[A] domestic violence victim's 'refusal to press charges' is the norm in domestic violence prosecutions"). In this case, the prosecutor recommended, with the victim's approval, that the respondent be placed on supervised probation for three years, subject to several conditions. The prosecutor explained to the sentencing judge that the Commonwealth was forgoing more serious charges in deference to the victim's expressed wishes and interests.

[12]At the respondent's plea colloquy, the prosecutor recited facts which, with one exception not relevant here, the respondent admitted were true. As the prosecutor described the attack, he said: "She [the victim] said she was afraid and *she started to tell the [respondent] not to do anything because of the children*" (emphasis added).

also *Custody of Vaughn, supra* at 596 ("Particularly for children the sense that [the home] is the place of greatest danger is the ultimate denial that this is a world of justice and restraint, where people are entitled to respect").

States that have considered the question of the appropriate discipline for an attorney who commits an act of domestic violence have almost uniformly concluded that suspension is warranted, even where the violent acts do not give rise to a criminal conviction or where the attorney is convicted of a misdemeanor, and not a felony. See, e.g., *People v. Musick*, 960 P.2d 89 (Colo. 1998) (one year and one day suspension for commission of three assaults, although no criminal charges were filed); *Matter of Walker*, 597 N.E.2d 1271 (Ind. 1992) (sixty-day suspension, although no conviction at issue); *Supreme Court Bd. of Professional Ethics & Conduct v. Ruth*, 636 N.W.2d 86 (Iowa 2001) (indefinite suspension with no possibility of reinstatement for six months for conviction of operating while intoxicated, together with domestic abuse assault).[13] See also *Attorney Grievance Comm'n v. Painter*, 356 Md. 293 (1999) (suspension is "the sanction imposed by most courts addressing the issue" of domestic violence committed by attorney).[14]

In looking for "comparable cases" in Massachusetts, bar

---

[13]See also *People v. Reaves*, 943 P.2d 460 (Colo. 1997) (six-month suspension for disorderly conduct conviction and several arrests for domestic violence); *People v. Knight*, 883 P.2d 1055 (Colo. 1994) (180-day suspension for misdemeanor third degree domestic assault); *People v. Wallace*, 837 P.2d 1223 (Colo. 1992) (three-month suspension for assault conviction arising from act of domestic violence); *Committee on Professional Ethics & Conduct v. Patterson*, 369 N.W.2d 798 (Iowa 1985) (indefinite suspension with no possibility of reinstatement for three months for misdemeanor conviction of assault and battery committed against girl friend).

[14]We are aware of only three cases where a sanction less than suspension was imposed on an attorney who committed an assault stemming from an act of domestic violence. See *People v. Senn*, 824 P.2d 822 (Colo. 1992); *Matter of Magid*, 139 N.J. 449 (1995); *Matter of Principato*, 139 N.J. 456 (1995). In *People v. Senn, supra*, the Supreme Court of Colorado imposed a public censure on an attorney who, while intoxicated, discharged a gun aimed above his wife's head. In *People v. Wallace*, 837 P.2d 1223, 1225 (Colo. 1992), however, the Colorado court distinguished *People v. Senn, supra*, explaining that, in the *Senn* case, there was no risk of actual injury to the wife. In *Matter of Magid, supra*, and *Matter of Principato, supra*, decided on the same day, the Supreme Court of New Jersey imposed a public reprimand on two at-

counsel points to Matter of Lee, S.J.C. No. BD-1999-067 (Feb. 2, 2001), in which an attorney was disciplined for an assault conviction stemming from an act of domestic violence. The attorney in that case had admitted to sufficient facts on one count of simple assault and battery, two counts of assault and battery by means of a dangerous weapon, and four counts of violation of an abuse prevention order. The attorney had a history of abusive behavior and, moreover, had previously received a letter of admonition for unrelated conduct. In mitigation in that case, the board found that the attorney's conduct was caused, in part, by alcoholism and that he had willingly participated in treatment. He was suspended from the practice of law for six months, the last three months suspended for two years.

The respondent in this case has been convicted of a single assault, and has no prior history either of abuse or of any other misconduct. While his case thus differs from the Lee case, *supra*, in its particulars, at the core both concern serious acts of domestic violence. We have explained that "abuse by a family member inflicted on those who are weaker and less able to defend themselves . . . is a violation of the most basic human right, the most basic condition of civilized society: the right to live in physical security." *Custody of Vaughn, supra* at 595. In this case, the hearing committee and the board recognized the seriousness of the respondent's assault, but reasoned that, "because the respondent did not engage in a pattern of domestic abuse and violation of abuse prevention orders, his suspension should be shorter than that in Lee." We are of the view that a recommendation by the board for a longer suspension would have been warranted, but we give the board's determination "substantial deference." *Matter of Tobin*, 417 Mass. 81, 88 (1994), and cases cited. The board made its recommendation in this case, as it must, "on its own merits" in an effort that "every offending attorney . . . receive the disposition most appropriate in the circumstances." *Matter of Nickerson*, 422 Mass. 333, 335

torneys who had committed simple assaults in a domestic context. The court explained, however, that its more lenient sanction was due, in part, to the fact that the issue was a matter of first impression in New Jersey. The court cautioned that "in the future [it would] ordinarily suspend an attorney who is convicted of an act of domestic violence." *Matter of Magid, supra* at 455; *Matter of Principato, supra* at 463.

(1996), quoting *Matter of the Discipline of an Attorney*, 392 Mass. 827, 837 (1984). We therefore conclude that the appropriate sanction is, as the board recommended, suspension of the respondent from the practice of law for two months.

The decision of the single justice is vacated. A judgment is to be entered in the Supreme Judicial Court for Suffolk County ordering that the respondent be suspended from the practice of law for two months.

*So ordered.*