In the Matter of Fawn Balliro.

Suffolk. November 5, 2008. - January 15, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Attorney at Law,* Disciplinary proceeding, Suspension.

Statement of the standard of review that this court employs in reviewing a bar discipline matter. [83-84]

In a bar disciplinary proceeding in which the respondent was charged with testifying falsely under oath, bar counsel satisfied her burden of proving that the respondent, who had been a victim of domestic assault, acted knowingly when she testified falsely about her injuries at the trial of her assailant. [84-85]

A six-month suspension from the practice of law was the appropriate sanction to impose in a bar disciplinary proceeding involving the respondent, a victim of domestic assault who had testified falsely under oath at the out-of-State trial of her assailant, where the respondent's misconduct, although a violation of the fundamental tenets of her oath of office and her ethical obligations, was an aberration in an otherwise promising and exemplary career; where bar counsel failed to establish that the respondent had committed perjury in the forum State; and where, among other mitigating factors, the respondent's dysfunctional psychological state, brought about by the domestic abuse, was a substantial contributing cause of her misconduct. [85-89]

Information filed in the Supreme Judicial Court for the county of Suffolk on March 28, 2008.

The case was reported by *Cordy,* J.

*Constance V. Vecchione,* Bar Counsel.

*Camille F. Sarrouf & Arnold R. Rosenfeld* for the respondent.

*Andrew N. Nathanson & Marbree D. Sullivan* for The National Network to End Domestic Violence & another, amici curiae, submitted a brief.

Spina, J. The present bar discipline matter is before us on a reservation and report, without decision, from a single justice of this court. The respondent, Fawn Balliro, is an assistant district attorney in Massachusetts and was the victim of a domestic as-

sault in Tennessee in 2005. The Board of Bar Overseers (board) has recommended that she be given a public reprimand, with conditions,[1] for testifying falsely under oath at the criminal trial of her assailant. At issue is the appropriateness of that sanction given the unique factual circumstances underlying the respondent's misconduct. For the reasons that follow, we conclude that a six-month suspension from the practice of law is the appropriate disciplinary sanction.[2]

1. *Background.* The following facts are drawn from the findings of a majority of a hearing committee, which were adopted unanimously by the full board. See *Matter of Brauer*, 452 Mass. 56, 57 (2008). We have supplemented the hearing committee's findings with undisputed facts contained in the record on appeal. See *id.*

The respondent was admitted to the practice of law in this Commonwealth on April 7, 2004. In March, 2004, while working as a law clerk for a Federal judge in Nashville, Tennessee, she began a romantic relationship with Greg Knox. In August, 2004, the respondent moved to Massachusetts to start a new job as an assistant district attorney.

The respondent returned to Tennessee in January, 2005, to spend a long weekend with Knox. On a Saturday evening, they went out for dinner and drinks with another couple. While at a bar, the respondent had a brief conversation with another man, causing Knox to leave the bar. The respondent could tell that he was angry, she followed him outside, they exchanged words, and he knocked her to the ground. Knox then walked back to his apartment. Very upset, but with no visible injuries, the respondent was given a ride to Knox's apartment by a passing police officer. When she arrived, the respondent found the door unlocked and Knox in the shower, fully clothed. A "screaming match" ensued, and the respondent knocked some items off a dresser. Knox pinned her to the bed and repeatedly punched her while she yelled for help. She thought that she was going to die. The

[1]The board directed that the respondent be evaluated for alcohol abuse and, if recommended, participate in treatment.

[2]We acknowledge the amicus brief filed in support of the respondent by The National Network to End Domestic Violence and Jane Doe, Inc., and The Massachusetts Coalition Against Sexual Assault and Domestic Violence.

respondent suffered injuries to her head and face, including a black eye and cuts to her lips.

Two police officers were dispatched to Knox's apartment in response to a report of a woman screaming for help. When they entered, they saw that the apartment was in disarray. According to the police, the respondent appeared intoxicated, had visible injuries to her eye and mouth, and was crying. She told the officers that she did not want to press charges and did not want to make a statement. The respondent told Knox not to talk with the police, and she asked the officers to leave. They handcuffed the respondent and told her that she was under arrest for disorderly conduct and obstruction of justice. The officers then removed both parties from the apartment and separated them. The respondent began to cry again. She denied that Knox had hit her and said that she had been assaulted while walking home, whereupon the officers removed the handcuffs.

The police officer who had driven the respondent to Knox's apartment arrived on the scene and informed the other officers that the respondent had been uninjured when he saw her. The respondent did not allow herself to be photographed, and she refused to sign the police report of the incident. She also told the officers that she did not want to press charges against the person who, she said, had assaulted her on her way home from the bar. Knox was arrested, taken to jail, and charged with two counts of misdemeanor domestic assault. The next morning, the respondent secured Knox's release on bail, and the two reconciled. Knox had never been violent with the respondent before this incident, and he was not violent after it.

At the end of the long weekend, the respondent returned to Massachusetts. She told only her younger sister about the incident, and when asked at work about her injuries, she said that she had hit her head on the dashboard of her car.

Two or three weeks later, Knox visited the respondent. He informed her for the first time that he was on probation for drug charges, and that if he violated his probation he would go to jail. Knox further told the respondent that he did not know who would support his two minor daughters if he went to jail because his former wife was not employed. At some point after this visit, Knox's attorney telephoned the respondent and told her that, un-

like a number of other defendants charged with domestic violence, Knox was not being offered the option of pretrial probation and counselling in exchange for the eventual dismissal of the charges. The respondent concluded that, if convicted, Knox would be incarcerated. She then created a story about falling and injuring herself, which she told to Knox's attorney. After this conversation, the respondent received a telephone call from a victim witness advocate in Nashville. The respondent asked the advocate to tell the assistant district attorney that she did not want to press charges against Knox. The advocate did not advise the respondent to seek independent counsel.

In March, 2005, the respondent received in the mail a summons to testify at Knox's trial, and although she did not want to do so, the respondent believed that the summons obligated her to appear. The respondent did not consult an attorney (or anyone else) because she was embarrassed about the whole incident. Moreover, she did not expect that she actually would have to testify.

The trial was held on April 21, 2005, in a Court of General Sessions in Nashville. The assistant district attorney on the case had not yet been admitted to the Tennessee bar, but was prosecuting cases under special supervision, and he had received no formal training in handling victims of domestic violence. The respondent told him that she did not want to press charges or testify against Knox. When the prosecutor told her that it was not possible to drop the charges, the respondent told him that she had fallen and hurt her face. The prosecutor told her that he thought she was lying, that she had been beaten, and that she would have to testify. He did not advise her to obtain counsel. The prosecutor proceeded to call as witnesses the respondent and at least one of the police officers who had gone to Knox's apartment in the aftermath of the January incident. At the time of her testimony, the respondent felt responsible for triggering Knox's assault, felt guilty over the possibility that Knox's children would be left without support, and wanted the entire matter to go away. Consequently, the respondent testified under oath that she had injured herself by falling on a piece of furniture in Knox's apartment.

· At the conclusion of the trial, the charges against Knox were dismissed, and the respondent returned to Massachusetts. In

December, 2005, a Tennessee district attorney wrote to the Massachusetts district attorney in whose office the respondent worked and informed her about the respondent's false testimony. Shortly thereafter, two of the respondent's supervisors met with her, informed her that they were concerned her conduct could be an ethical violation, suspended her from her job, and advised her to obtain legal counsel, which she did. In February, 2006, the district attorney placed the respondent on an indefinite leave of absence, and the respondent agreed to report her conduct to the board, to participate in counselling to address issues relating to domestic violence and substance abuse, and to provide monthly documentation of her compliance with these terms. During her leave of absence, the respondent voluntarily refrained from the practice of law. She also went to a psychiatrist for an examination and evaluation. He recommended counselling for six months and referred her to a psychologist, whom the respondent saw weekly for at least ten months. In June, 2006, based on the respondent's full compliance with the conditions of her leave, the district attorney assigned her to the appellate division of her office. The respondent's immediate supervisor described the respondent's work there as "stellar."

On June 2, 2006, bar counsel commenced formal proceedings against the respondent by filing with the board a petition for discipline, alleging that the respondent had engaged in misconduct by knowingly making false statements to the Nashville police in January, 2005, and by knowingly giving false testimony under oath at Knox's criminal trial in April, 2005. In her amended answer to the petition, the respondent admitted to the substantive allegations of misconduct, but she stated that her intoxication on the night of the incident, her physical abuse at the hands of Knox, and her precarious psychological state at the time she testified constituted special factors that rendered her false statements not of her own volition.

Disciplinary hearings were held before a hearing committee of the board. On May 21, 2007, it issued a report setting forth its findings of fact, conclusions of law, and recommendation for discipline. A majority of the hearing committee (the hearing committee) found that the respondent knowingly gave false testimony at Knox's trial. It stated that the respondent had admitted in her

amended answer that she knew her testimony was false, and she "freely admit[ted]" to her evaluating psychiatrist, Dr. David Rosmarin, that she "perjured" herself and that she had "concocted" the story to which she testified. The hearing committee did not credit the respondent's testimony that when she testified falsely, she had "pretty much convinced [herself] of [her] own story."

The hearing committee credited the following testimony from Dr. Rosmarin: (1) at the time of Knox's arrest, the respondent was impaired by intoxication, pain, and her injuries; (2) the respondent's actions were motivated by a desire to protect Knox and, to a lesser extent, an irrational fear of prosecution for damaging his property; (3) although the respondent did not suffer from battered woman syndrome, she did have "symptoms and impairments" when she gave false testimony, and she "had a cognitive blind spot for her own ethical and legal jeopardy and focused predominantly on protecting [Mr. Knox] and his children," a reaction "typical" of abused women; (4) the respondent's trial testimony was not self-serving, and her behavior was a one-time exception to a life of hard work, integrity, devotion to the law, and public service; (5) the respondent was not "psychologically prepared" to tolerate the beating by Knox, and she lacked insight into her reaction to the beating when she made her false statements; and (6) the respondent has accepted responsibility for her actions and is highly unlikely to breach her ethical duties in the future. The hearing committee also credited the following testimony from Dr. Patricia Harney, the respondent's treating psychologist: (1) by blaming herself for her beating and Knox's arrest, and by testifying falsely, the respondent followed the pattern of victims of domestic violence; and (2) it is very unlikely that the respondent would engage in the same type of behavior again.[3]

The hearing committee concluded that the respondent's false

---

[3]The hearing committee noted that Dr. Harney did not think that the respondent considered herself to be lying when she gave false testimony because the respondent was focused more on getting Knox and his children out of the trouble that she saw herself as creating. The hearing committee credited this testimony to the extent that Dr. Harney concluded that the respondent was not cognizant of engaging in unethical behavior during her false testimony, but the committee found that the respondent knew that she was giving false testimony.

statements to the Tennessee prosecutor and her false testimony under oath at Knox's trial violated Mass. R. Prof. C. 3.3 (a) (1), 426 Mass. 1383 (1998) (lawyer shall not knowingly make false statement of material fact or law to tribunal); Mass. R. Prof. C. 3.3 (a) (4), 426 Mass. 1383 (1998) (lawyer shall not knowingly offer evidence that lawyer knows to be false [with exceptions not relevant here]); Mass. R. Prof. C. 8.4 (c), 426 Mass. 1429 (1998) (professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); Mass. R. Prof. C. 8.4 (d), 426 Mass. 1429 (1998) (professional misconduct for lawyer to engage in conduct prejudicial to administration of justice); and Mass. R. Prof. C. 8.4 (h), 426 Mass. 1429 (1998) (professional misconduct for lawyer to engage in any other conduct that adversely reflects on fitness to practice law).[4] The hearing committee stated that while the respondent's psychological state at the time of her false testimony was a causal factor in giving such testimony, it did not so impair her that she was unable to form the mental state — knowing falsity — required for a violation of rules 3.3 (a) (1) and (4), and rule 8.4 (c). Rather, the committee continued, the respondent made a conscious decision, based on emotions, to give false testimony, and any impairment she suffered did not negate the elements of her offenses under those rules and under rule 8.4 (d) and (h).[5]

The hearing committee then considered whether there were any aggravating or mitigating factors that should be evaluated with respect to the imposition of a disciplinary sanction. The

[4]In her petition for discipline, bar counsel also had alleged that the respondent's false statements to the Nashville police in January, 2005, violated Mass. R. Prof. C. 8.4 (c), (d), and (h), 426 Mass. 1429 (1998). The hearing committee found that, in light of her alcohol consumption, her injuries, and the shock of being placed in handcuffs by the police, the respondent was so impaired that she was not capable of forming the mental state required to violate those rules. Bar counsel did not appeal from this determination to the board.

[5]The hearing committee concluded that because bar counsel did not educate the committee about the law of perjury in Tennessee, and because the crime of perjury varies from State to State, bar counsel failed to meet her burden of proving that the respondent's false testimony under oath at Knox's trial violated Mass. R. Prof. C. 8.4 (b), 426 Mass. 1429 (1998) (professional misconduct for lawyer to commit criminal act that reflects adversely on lawyer's honesty, trustworthiness, or fitness as lawyer in other respects). Bar counsel did not appeal from this determination to the board.

committee did not find that the respondent suffered from battered woman syndrome as it has come to be recognized under Massachusetts law, see *Commonwealth* v. *Pike*, 431 Mass. 212, 221-222 (2000), and neither of the respondent's expert witnesses made that diagnosis. However, the hearing committee found that, at the time of her false testimony, the respondent's dysfunctional psychological state was a significant contributing cause of such testimony. Because the respondent has received treatment, the committee continued, she was not likely to repeat her ethical misconduct, and, therefore, her dysfunctional psychological state at the time of Knox's trial could be considered in mitigation. The hearing committee found no factors in aggravation. It concluded that, in light of the unique and compelling mitigating circumstances of this case, it would deviate substantially downward from the presumptive sanction of a one-year or two-year suspension, and it recommended that the respondent receive a public reprimand, with conditions.[6]

Bar counsel and the respondent filed cross appeals from the hearing committee's decision. Bar counsel accepted the findings of fact and credibility determinations made by the hearing committee, but objected to its failure to find in aggravation that, as an assistant district attorney, the respondent had obligations to the administration of justice beyond those imposed on attorneys in general. Further, bar counsel asserted that the appropriate disciplinary sanction was a term of suspension of one year and one day. The respondent claimed that bar counsel failed to prove that she knowingly testified falsely, and, therefore, this case should be dismissed. In the alternative, the respondent argued that, due to substantial mitigating circumstances, the appropriate sanction was an admonition.

On March 10, 2008, the board issued its decision, unanimously adopting the findings of fact, the conclusions of law, and the recommended sanction of the hearing committee. With respect to the respondent's appeal, it concluded that there was no basis for

---

[6]In a dissenting opinion, the chairman of the hearing committee concluded that the respondent did not have the mental intent necessary to violate the rules of professional conduct. If he assumed that the respondent had violated such rules, as found by the majority of the hearing committee, then he recommended that the respondent receive an admonition, with the additional conditions recommended by the majority.

overturning the committee's credibility findings as to the respondent's knowledge regarding her false testimony. With respect to bar counsel's appeal, the board stated that district attorneys are not held to a higher standard of ethical behavior than other lawyers when all attorneys are expected to know and understand their professional obligation to be truthful in court. Moreover, the board pointed out that the respondent's misconduct arose from personal aspects of her private life, not from any connection with her work as an assistant district attorney. Given the serious and substantial mitigating circumstances presented, and noting that a more experienced prosecutor would not have forced the respondent to testify at Knox's trial in the absence of her consultation with independent counsel, the board agreed with the hearing committee that a public reprimand was the appropriate disciplinary sanction.

At bar counsel's request, the board filed an information with the county court pursuant to S.J.C. Rule 4:01, § 8 (4), as appearing in 425 Mass. 1309 (1997). After a hearing, a single justice reserved and reported the case, without decision, to the full court. The thrust of bar counsel's argument is that the respondent's misconduct warrants a disciplinary sanction of suspension from the practice of law for one year and one day. In bar counsel's view, given that the minimum sanction for false statements by an attorney under oath is a term suspension of at least two years, her recommendation properly weighs, as factors in mitigation, the stress and emotional upheaval that contributed to the respondent's decision to testify falsely at Knox's criminal trial.

2. *Standard of review.* "In bar discipline cases that have been reserved and reported, we 'review the board's findings and reach our own conclusion.' " *Matter of Wainwright*, 448 Mass. 378, 384 (2007), quoting *Matter of Fordham*, 423 Mass. 481, 487 (1996), cert. denied, 519 U.S. 1149 (1997). Although the findings and recommendations of the board are not binding on this court, they are "entitled to great weight." *Matter of Fordham, supra*, citing *Matter of Hiss*, 368 Mass. 447, 461 (1975). "[S]ubsidiary facts found by the [b]oard and contained in its report filed with the information shall be upheld if supported by substantial evidence, upon consideration of the record." S.J.C. Rule 4:01, § 8 (4). The hearing committee is "the sole judge of

the credibility of the testimony presented at the hearing." *Id.* Its credibility determinations "will not be rejected unless it can be 'said with certainty' that [a] finding was 'wholly inconsistent with another implicit finding.' " *Matter of Barrett*, 447 Mass. 453, 460 (2006), quoting *Matter of Hachey*, 11 Mass. Att'y Discipline Rep. 102, 103 (1995).

3. *Respondent's knowledge of false testimony.* As a preliminary matter, the respondent contends that bar counsel failed to satisfy her burden of proving that the respondent acted knowingly when she testified falsely about her injuries at Knox's trial. We disagree.

The burden of proof in a disciplinary proceeding is always on bar counsel. See Rule 3.28 of the Rules of the Board of Bar Overseers (2008). See also *Matter of Driscoll*, 447 Mass. 678, 685 (2006). Based on the respondent's answer to an allegation in the petition for discipline and on her testimony at the disciplinary proceedings, the hearing committee found that the respondent had admitted that she knew her testimony was false. Further, it found that when the respondent was evaluated by Dr. Rosmarin, she told him that she "perjured" herself[7] and that she "concocted" the story about how she had been injured. The hearing committee did not credit the respondent's testimony that she had convinced herself of her own (false) story. Moreover, the respondent did not tell Dr. Rosmarin that she had convinced herself that her testimony was true.[8] The hearing committee credited the testimony of Dr. Rosmarin that the respondent had a "cognitive blind spot"

---

[7]In his written report about the respondent, Dr. Rosmarin stated: "In addition, on April 21, 2005, at a probable cause hearing in Nashville concerning Mr. Knox, she freely admits that she perjured herself because she had subsequently learned that Mr. Knox was on probation and he faced years of imprisonment were he convicted." We see nothing in this "admission" to Dr. Rosmarin that suggests that the respondent lacked knowledge about the falsity of her testimony at the time it was given. To the contrary, it shows that she considered the implications of her testimony, namely that if Knox were convicted, he would be incarcerated. The probable cause hearing referred to by Dr. Rosmarin was actually the trial.

[8]During cross-examination of Dr. Rosmarin at the disciplinary proceedings before the hearing committee, bar counsel asked, "[The respondent] indicated to you that she knew that what she had said was not true, is that not correct?" Dr. Rosmarin responded, "She was absolutely uncompromising about that." Bar counsel asked, "That what she said was not true?" Dr. Rosmarin responded, "When she told me that in February, yes." Bar counsel asked, "And she had

for her own ethical and legal jeopardy, but it concluded that such blind spot "did not prevent her from recognizing that her testimony was false." While the hearing committee credited the testimony of Dr. Harney that the respondent was not cognizant of engaging in unethical behavior during her false testimony, it still found that she knew that she was giving false testimony.

There is no basis for overturning the credibility determinations made by the hearing committee. Based on the unambiguous evidence presented by bar counsel, the hearing committee, and then the board, properly could infer that the respondent knew, when she testified at Knox's trial, that she was giving false testimony with respect to how she sustained her injuries. See *Matter of Driscoll, supra* at 685 ("we will not draw an independent inference as to the respondent's knowledge when the facts are subject to several interpretations, particularly where the board declined to accept bar counsel's version of events"). We conclude that bar counsel satisfied her burden of proof as to the respondent's knowledge of the falsity of her testimony.[9]

4. *Appropriateness of sanction.* When considering a disciplinary sanction, we examine whether the sanction "is markedly disparate from judgments in comparable cases." *Matter of Finn,* 433 Mass. 418, 423 (2001). See *Matter of Kerlinsky,* 428 Mass. 656, 664, cert. denied, 526 U.S. 1160 (1999). "While this standard is relatively simple to state, it is one which is not always easy to apply because of factual nuances that distinguish cases from each other." *Matter of Shaw,* 427 Mass. 764, 768 (1998). Ultimately, we decide each bar discipline case "on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances." *Matter of the*

made no suggestion that she had persuaded herself that it was true?" Dr. Rosmarin responded, "That's correct."

[9]The respondent also has asserted in her brief that Mass. R. Prof. C. 3.3 (a) (1) and (4) are intended to regulate "the conduct of a lawyer who is representing a client in the proceedings of a tribunal." American Bar Association (ABA) Model Rule of Prof. C. 3.3 comment [1] (2008). She contends that, even though Massachusetts has not adopted the exact language of ABA Model Rule 3.3 and its comments, it is clear that this rule is intended to apply to a lawyer acting as an "advocate." Because the respondent failed to raise this argument before the hearing committee or the board, we deem it waived. See *Matter of Firstenberger,* 450 Mass. 1018, 1019 (2007), cert. denied, 128 S. Ct. 2510 (2008); *Matter of Cobb,* 445 Mass. 452, 477 (2005).

*Discipline of an Attorney*, 392 Mass. 827, 837 (1984). The overriding consideration in bar discipline is "the effect upon, and perception of, the public and the bar." *Matter of Kerlinsky*, *supra*, quoting *Matter of Finnerty*, 418 Mass. 821, 829 (1994). "We must consider what measure of discipline is necessary to protect the public and deter other attorneys from the same behavior." *Matter of Concemi*, 422 Mass. 326, 329 (1996).

We begin by considering the appropriate sanction for the respondent's misconduct, and then we evaluate whether the sanction should be heightened or reduced after weighing any aggravating or mitigating factors. The disciplinary sanction for an attorney who gives false testimony, under oath, at a criminal trial in which she was the victim has not been addressed in Massachusetts.[10]

We have stated that "an attorney who lies under oath engages in 'qualitatively different' misconduct from an attorney who makes false statements and presents false evidence." *Matter of Shaw*, 427 Mass. 764, 769 (1998), quoting *Matter of Budnitz*, 425 Mass. 1018, 1019 (1997). In *Matter of Shaw*, *supra* at 767-769, we concluded that the respondent should be suspended for two years where he made false statements under oath in a Federal criminal trial, filed a false affidavit in a Superior Court proceeding, and forged another attorney's name in the affixation of false notarizations, misconduct that was aggravated by two prior instances of discipline. See *Matter of O'Donnell*, 23 Mass. Att'y Discipline Rep. 508, 514 n.3 (2007) ("the presumptive sanction for lying under oath is a two-year suspension"); *Matter of Early*, 21 Mass. Att'y Discipline Rep. 220, 226 (2005) (misrepresentations made by attorney for personal gain, under

---

[10]The sanction for making an intentional or knowing misrepresentation to a tribunal is a one-year suspension. See *Matter of McCarthy*, 416 Mass. 423, 431-432 (1993) (attorney elicited false testimony and offered false documents in proceeding before rent control board); *Matter of Neitlich*, 413 Mass. 416, 421-423 (1992) (attorney perpetrated fraud on Probate and Family Court and opposing counsel by actively misrepresenting terms of client's pending real estate transaction); *Matter of Giuliotti*, 10 Mass. Att'y Discipline Rep. 133, 136-139 (1994) (attorney signed expert's name to affidavit and filed it with court offering opinion that expert had not rendered). Contrast *Matter of Ring*, 427 Mass. 186, 191-192 (1998) (attorney emotionally traumatized by breakup of marriage suspended for three months for outrageous treatment of wife and contemptuous disregard of court orders entered in divorce action).

oath, regarding crucial and material fact in litigation warranted suspension of at least two years, even in absence of other misconduct).

In more egregious circumstances, typically those involving aggravating factors, an attorney's giving false testimony under oath can justify disbarment. See *Matter of Budnitz, supra* at 1018 (attorney disbarred for knowingly lying to grand jury and perpetuating lies in answer to complaint in disciplinary proceeding). See also *Matter of Bailey*, 439 Mass. 134, 151-152 (2003) (attorney disbarred for giving false testimony under oath, misappropriating client's funds, violating court orders, revealing client confidences, commingling funds, and self-dealing); *Matter of Palmer*, 423 Mass. 647, 670 (1996) (attorney disbarred for fabricating documents and committing perjury during deposition); *Matter of Sleeper*, 251 Mass. 6, 20 (1925) (attorney disbarred for committing perjury). The ABA Standards for Imposing Lawyer Sanctions § 6.11 (1991), states that, absent aggravating or mitigating circumstances, "[d]isbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement . . . and . . . causes a significant or potentially significant adverse effect on the legal proceeding."

The present case is not one of egregious circumstances that would justify a sanction of disbarment because there were no findings of matters in aggravation. To the contrary, the board found that the respondent's ethical violation was an aberration in an otherwise promising and exemplary career. In addition, the hearing committee determined that bar counsel did not establish that the respondent had committed the crime of perjury in Tennessee. See note 5, *supra*. We conclude that this case is most like those in which a two-year suspension from the practice of law was imposed.

We now turn to the issue of mitigating factors. From the immediate aftermath of the January, 2005, incident until the day of Knox's trial, the respondent was clear and unequivocal that she neither wanted to press charges against Knox nor wanted to testify at trial. Yet, her wishes were ignored, and she was called as a witness against Knox. The hearing committee found credible the opinions of Dr. Rosmarin that the respondent's false testimony was "genuinely but superficially motivated by a moral decision

to protect Mr. Knox," that she had a "cognitive blind spot" for her own ethical and legal jeopardy, and that her focus was on protecting Knox and his children. The committee also credited the testimony of Dr. Harney that the respondent "was not cognizant of engaging in unethical behavior during her false testimony." In all, the respondent's dysfunctional psychological state, brought about by the domestic abuse, was a substantial contributing cause of her misconduct. Bar counsel accepts that the respondent did not act for a selfish motive. In addition, the hearing committee credited the testimony of Dr. Rosmarin that, because the respondent has accepted responsibility for her actions and has received psychological treatment, she is highly unlikely to breach her ethical duties again and is "more likely to be hyper alert to even gray zone improprieties." These unique and compelling mitigating circumstances warrant a downward departure from the sanction of a two-year suspension.

By the same token, we cannot overlook or minimize the fact that the respondent knowingly gave false testimony, under oath, at a criminal trial, the result of which was that the charges against Knox were dismissed. As Drs. Rosmarin and Harney testified, the physical and emotional trauma suffered by the respondent was considerable, and it served to explain and put into perspective the underlying reasons for her false testimony. However, those reasons did not negate the fact of the respondent's misconduct. Contrary to the respondent's contention, even though she may not have made her false statement while she, herself, was engaged in the practice of law, the respondent made such statement while participating in a formal legal proceeding at which she was obligated to give truthful testimony. Moreover, the seriousness of that misconduct cannot be downplayed simply by saying that the matter about which she testified falsely was a private one that arose in the context of a purely personal relationship. When the respondent was admitted as an attorney in this Commonwealth, she took an oath of office pursuant to G. L. c. 221, § 38, in which she solemnly swore, among other things, that she would "do no falsehood, nor consent to the doing of any in court." All attorneys, whether those of long standing or those recently admitted to the Massachusetts bar, are expected to know and understand their professional obligation to be truthful in

court. It is a simple and unambiguous standard of ethical conduct, and the respondent violated it. Notwithstanding the substantial mitigating factors in this case, we cannot condone the actions of an attorney in giving false testimony under oath, irrespective of the circumstances. We conclude that the appropriate disciplinary sanction for the respondent's misconduct is a six-month suspension from the practice of law.

We recognize and share the board's concern about the perceived inequity of sanctioning the respondent more severely than attorneys who have been convicted of domestic assault. See *Matter of Grella*, 438 Mass. 47, 51 (2002) (attorney suspended for two months after conviction of misdemeanor arising from violent assault on estranged wife). As we have stated, "[e]ngaging in violent conduct is antithetical to the privilege of practicing law." *Id.* at 52. The distinction with respect to the circumstances of the present case is that the respondent's misconduct occurred in the context of testifying under oath in a criminal trial. Such misconduct was a violation of the fundamental tenets of her oath of office and of her ethical obligations, matters at the very heart of the legal profession.

5. *Conclusion.* This case is remanded to the single justice for the entry of an order suspending the respondent from the practice of law for six months.

*So ordered.*