## In the Matter of Wilfred C. Driscoll, Jr.

Suffolk. October 6, 2006. - November 17, 2006.

Present: Marshall, C.J., Greaney, Ireland, Spina, Sosman, & Cordy, JJ.

*Board of Bar Overseers. Attorney at Law,* Disciplinary proceeding, Deceit, Conflict of interest, Suspension.

Statement of the standard of review applied by this court in bar discipline appeals. [683-684]

This court concluded that a one-year suspension — and not the two-year suspension recommended by the Board of Bar Overseers — was the appropriate sanction for an attorney who pleaded guilty in Federal court to one count of making a false statement to a federally insured bank in violation of 18 U.S.C. § 1014 (2000), where although bar counsel failed to prove that the attorney knew, or should have known, that he was notarizing a forged signature on loan documents [684-686], the attorney's personal and professional relationship with one of the borrowers (who had represented that the forged signature was genuine) created a conflict of interest with respect to the attorney's representation of the bank during the closing of the loan documents [686-687], a conflict that was tempered, among other things, by the fact that the borrower had obtained the bank's permission to use the attorney for the closing, notwithstanding their relationship [687-690].

Information filed in the Supreme Judicial Court for the county of Suffolk on June 14, 2004.

The case was reported by *Greaney,* J.

*Nancy E. Kaufman,* Assistant Bar Counsel.

*J.W. Carney, Jr.,* for the respondent.

Spina, J. The present bar discipline matter is before us on a reservation and report, without decision, from a single justice of this court. The Board of Bar Overseers (board) has recommended that the respondent, Wilfred C. Driscoll, Jr., be suspended from the practice of law for two years as a consequence of pleading guilty in the Federal District Court to one count of making a false statement to a federally insured bank in violation of 18 U.S.C. § 1014 (2000). For the reasons

that follow, we conclude that a one-year suspension from the practice of law is the appropriate disciplinary sanction.

1. *Background.* The following facts are drawn from the findings of a hearing panel that were adopted, in substantial part, by the full board. Additional facts will be discussed as they relate to the parties' specific claims of error.

The respondent has been a member of the bar of the Commonwealth since 1977, and his practice has consisted primarily of performing real estate closings. From 1991 until 1999, the respondent employed Belmira Costa as his secretary. Several years prior to 1999, the respondent opened a credit card account in his name for the benefit of his brother, Arthur Driscoll, who was unable to secure his own account because of credit problems. Two credit cards were issued — one, in the name of the respondent's brother, was sent to the brother, who lived in California; the other, in the name of the respondent, was retained by Costa. The cards were procured for the exclusive use of the respondent's brother. He paid the outstanding balances by sending the amount owed to the respondent's office, where Costa deposited it into a bank account and then sent a check to the credit card company. Unbeknownst to the respondent or his brother, Costa used the credit card in her custody to make unauthorized cash withdrawals for her own personal use that, by 1999, totaled approximately $16,000. Costa erased the cash advances from the credit card statements prior to sending them to the respondent's brother and, for a period of time, he did not notice the discrepancies. The brother's girl friend eventually discovered the unauthorized withdrawals, contacted Costa, and arranged restitution. When confronted by the respondent, Costa admitted to her unauthorized use of the credit card. The respondent discharged her from employment, although Costa continued to perform occasional secretarial work for him. Costa did not tell her husband that she had stolen the money, and the respondent was aware of that fact.

In October, 1999, Costa sent the respondent's brother a check for $1,000. That same month, she saw an advertisement on television for Advanta National Bank (Advanta), which would lend money to consumers so they could consolidate their debts. Costa secured a loan in the amount of $82,000, using her marital

home as security, and obtained Advanta's permission to have the respondent serve as its attorney at the closing of the loan documents. She did not tell her husband about the loan. When the closing documents were transmitted by facsimile to the respondent's office, Costa took them home, forged her husband's signature on them, and returned them to the office. She told the respondent that her husband had been unable to take time off from his job to attend the closing, so she had him sign the documents ahead of time.[1] Costa signed the loan documents in the respondent's presence, and he notarized both signatures.

Costa used the proceeds of the loan to pay various debts, including her financial obligation to the respondent's brother. Subsequently, Costa and her husband sought a divorce. She defaulted on the loan from Advanta, but it was paid in full by Costa's father during the course of the divorce proceedings.

Eventually, the conduct of Costa and the respondent became the subject of a Federal criminal investigation. On March 30, 2004, the respondent pleaded guilty in the United States District Court for the District of Massachusetts to one count of making a false statement to a bank in violation of 18 U.S.C. § 1014.[2] The basis of the charge was that the respondent had notarized the signature of Costa's husband on the loan documents when the husband had not actually signed them in the respondent's presence. In light of the fact that Advanta had not suffered any loss as a result of the respondent's action, the respondent was sentenced to probation for two years and a fine of $5,000.

On June 14, 2004, the Office of Bar Counsel (bar counsel) filed a petition in the Supreme Judicial Court for Suffolk County for the immediate temporary suspension of the respondent from

---

[1]Costa frequently signed her husband's name to documents such as checks. Moreover, she had obtained other loans secured by marital property by signing her husband's name to the requisite documents. Those closing documents were notarized, but not by the respondent.

[2]In pertinent part, 18 U.S.C. § 1014 (2000) states: "Whoever knowingly makes any false statement or report . . . for the purpose of influencing in any way the action of [a federally insured bank] upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan . . . shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

the practice of law. Bar counsel also requested that the court refer the matter to the board for investigation and for the commencement of formal proceedings against the respondent. After a hearing, a single justice denied bar counsel's request for an immediate temporary suspension of the respondent but did order that the matter be referred to the board for investigation.

Bar counsel commenced formal proceedings against the respondent by filing a petition for discipline on December 22, 2004. Bar counsel asserted that because the respondent had pleaded guilty to a felony in Federal District Court, he had been convicted of a "serious crime" as defined by S.J.C. Rule 4:01, § 12 (3), as appearing in 425 Mass. 1313 (1997). As a consequence, bar counsel alleged that the respondent had violated Mass. R. Prof. C. 8.4 (b), (c), and (h), 426 Mass. 1429 (1998).[3] Bar counsel further alleged that the respondent's conduct in representing Advanta as closing attorney when the representation was or might be materially limited by his obligations to Costa and his own personal and financial interest in the transaction violated Mass. R. Prof. C. 1.7 (b), 426 Mass. 1330 (1998). The respondent admitted that his violation of 18 U.S.C. § 1014 constituted professional misconduct under Mass. R. Prof. C. 8.4, but he denied the allegation of a conflict of interest. A hearing was held before a panel of the board, at which the respondent chose not to testify.

On August 2, 2005, the hearing panel issued its report. It concluded that because the respondent had been convicted of making a false statement to a bank, he had engaged in conduct constituting a "serious crime" as defined by S.J.C. Rule 4:01,

---

[3]Rule 8.4 of the Massachusetts Rules of Professional Conduct, 426 Mass. 1429 (1998), states, in pertinent part:

"It is professional misconduct for a lawyer to . . .

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

"(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; . . .

"(h) engage in any other conduct that adversely reflects on his or her fitness to practice law."

§ 12 (3). By virtue of that conviction, the hearing panel stated that it was constrained to conclude that the respondent knew that Costa had forged her husband's signature on the loan documents. The panel further concluded that the respondent had not violated Mass. R. Prof. C. 1.7 (b) because bar counsel had failed to prove that the respondent had a financial interest, direct or indirect, in ensuring that Costa obtained the loan.

The hearing panel then considered mitigating and aggravating factors with respect to the imposition of disciplinary sanctions. In mitigation, the panel found that the respondent had not engaged in the conduct forming the basis for the criminal conviction for personal gain, that the respondent had acted from a desire to assist a long-time employee, and that the respondent's actions were not part of a pattern or practice of fraudulent conduct, but rather were one isolated incident. In aggravation, the panel found that Costa's initial inability to repay the loan had caused detriment to Advanta. The hearing panel recommended that the respondent be suspended from the practice of law for one year.

Both the respondent and bar counsel filed an appeal from the hearing panel's decision. On December 12, 2005, a divided board voted to adopt the hearing panel's findings of fact, modify certain of the panel's conclusions of law, and modify the recommended disciplinary sanction. The board declined bar counsel's invitation to make a specific finding that the respondent knew that Costa's husband had not signed the loan documents when the respondent notarized them. The board opined that it could not make such a finding where the evidence did not compel an inference that the respondent knew the signature was false, or that he avoided such knowledge by purposefully refusing to look. Next, the board concluded that the respondent had violated Mass. R. Prof. C. 1.7 (b). It stated that the respondent's relationship with Costa had kept him from exercising independent judgment on behalf of Advanta. Had there been no such relationship, the board opined, the respondent likely would have insisted that Costa's husband sign the loan documents in the respondent's presence. As a result of the respondent's conduct, the board concluded that Advanta's interests had not been protected. A majority of the voting members of the board recommended that

the respondent be suspended from the practice of law for two years.[4] The board filed an information with the county court pursuant to S.J.C. Rule 4:01, § 8 (4), as appearing in 425 Mass. 1309 (1997). The matter is now before the full court on a reservation and report.

Bar counsel claims that (1) the respondent knew that the signature of Costa's husband had been forged when he notarized the loan documents; and (2) disbarment is the appropriate sanction for a lawyer who commits a felony while representing a lender at a real estate closing. The respondent contends that (1) bar counsel failed to prove that he knew that the signature of Costa's husband had been forged; (2) the board erred in concluding that his relationship with Costa established a conflict of interest; and (3) the appropriate disciplinary sanction is a public reprimand.

2. *Standard of review.* The standard of review for appeals in bar discipline cases is well established. The hearing committee is "the sole judge of the credibility of the testimony presented at the hearing" on bar counsel's petition for discipline. S.J.C. Rule 4:01, § 8 (4). See *Matter of Concemi*, 422 Mass. 326, 328 (1996). After receiving the hearing committee's report, the board "shall review, and may revise, the findings of fact, conclusions of law and recommendation of the hearing committee." S.J.C. Rule 4:01, § 8 (4). "[A]lthough not binding on this court, the findings and recommendations of the board are entitled to great weight." *Matter of Fordham*, 423 Mass. 481, 487 (1996), cert. denied, 519 U.S. 1149 (1997), citing *Matter of Hiss*, 368 Mass. 447, 461 (1975). "[S]ubsidiary facts found by the [b]oard and contained in its report filed with the information shall be upheld if supported by substantial evidence, upon consideration of the record." S.J.C. Rule 4:01, § 8 (4). " 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). "While we review the entire record and consider whatever detracts from the weight of the board's

---

[4]Eleven members of the board were present for the vote. Four members voted in favor of the motion, and two members voted against it, preferring a lesser disciplinary sanction. Three members recused themselves from the discussion and vote. The chairperson and one other member did not vote.

conclusion, as long as there is substantial evidence, we do not disturb the board's finding, even if we would have come to a different conclusion if considering the matter de novo." *Matter of Segal*, 430 Mass. 359, 364 (1999).

3. *Knowledge of respondent.* Bar counsel contends that the respondent knew that the signature of Costa's husband on the loan documents had been forged. In the remote possibility that the respondent did not have such actual knowledge, bar counsel continues, only wilful blindness could have caused the respondent to miss the striking similarity in the signatures of Costa and her husband and, as a consequence, to refrain from contacting the husband about verifying his signature. Based on our review of the record, we disagree with bar counsel's contentions.

After the respondent pleaded guilty to one count of making a false statement to a federally insured bank, a sentencing hearing was held in the Federal District Court. At this hearing, a United States attorney stated that, if the case had proceeded to trial, he would have presented evidence to prove that the respondent "falsely represented and falsely attested by notarizing that his secretary's husband was present at the closing and [had] sign[ed] the necessary paperwork that [Advanta] required." Further, in doing so, the respondent "was obviously making false statements or false representations to [Advanta], which [was] the basis for the violation in this case." At no time did the United States attorney claim that the respondent knew that the signature of Costa's husband had been forged. The respondent's guilty plea did not require him to make such an acknowledgment. His false statement to Advanta pertained solely to the respondent's attestation, in his capacity as a notary, that Costa's husband had been present at the closing and had signed the loan documents.[5]

In its determination on bar counsel's petition for discipline, the hearing panel did not make a specific finding that the

---

[5]Bar counsel relies, in part, on a "proffer" that the respondent purportedly made to a United States attorney in which he "admitted that he knew the loan document that Belmira Costa made out [and] he notarized was a fraudulent transaction." The proffer does not indicate that the respondent had such knowledge when the closing of the loan occurred in December, 1999. The proffer was dated two years later, and it does not specify when the respondent learned that the signature of Costa's husband had been forged.

respondent knew, or should have known, that Costa's husband had not signed the loan documents. The panel noted that there was evidence to support both sides of the issue. Instead of making a specific finding, the hearing panel stated that it was constrained to conclude that the respondent was aware that Costa had forged her husband's signature by virtue of his Federal conviction. As we have stated, that conviction was not based on the respondent's knowledge whether the signature of Costa's husband had been forged. Accordingly, the panel's reliance on the respondent's Federal conviction to establish his knowledge as to the authenticity of the signature was erroneous as a matter of law. We add that the hearing panel also stated that the facts in this case did not warrant a finding of knowledge based on principles of wilful blindness.

In reviewing the hearing panel's decision, the board flatly rejected the panel's determination as to the respondent's knowledge about the authenticity of the signature of Costa's husband on the loan documents. The board concluded that this was not a case where the evidence compelled the inference that the respondent knew that the signature of Costa's husband had been forged or that he avoided such knowledge by purposefully refusing to look. Based on its independent assessment, the board was not convinced that facts that should have put the respondent on notice were as substantial and obvious as those that warranted a finding of wilful blindness in *Matter of Zimmerman*, 17 Mass. Att'y Discipline Rep. 633, 645-650 (2001).

The burden of proof in a disciplinary proceeding is always on bar counsel. See Rule 3.28 of the Rules of the Board of Bar Overseers (2006). See also *Matter of Hoicka*, 442 Mass. 1004, 1006 (2004). While the evidence here suggests that the respondent may have suspected that the signature of Costa's husband had been forged, the evidence was not overwhelmingly clear or unambiguous. Consequently, we will not draw an independent inference as to the respondent's knowledge when the facts are subject to several interpretations, particularly where the board declined to accept bar counsel's version of events. See *Matter of Orfanello*, 411 Mass. 551, 556 (1992) (appellate court must accept board's findings of fact and may draw reasonable inferences therefrom). Notwithstanding vigorous advocacy,

bar counsel simply failed to prove that the respondent knew that he was notarizing a forged signature, and we decline to make our own finding to that effect.

4. *Conflict of interest.* The respondent contends that the board erred when it concluded that his relationship with Costa created a conflict of interest with respect to his representation of Advanta during the closing of the loan documents, thereby constituting a violation of Mass. R. Prof. C. 1.7 (b). We disagree.

Rule 1.7 of the Massachusetts Rules of Professional Conduct states, in pertinent part:

> "(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

> "(1) the lawyer reasonably believes the representation will not be adversely affected; and

> "(2) the client consents after consultation."

"Loyalty to a client is . . . impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests." Comment [4] to rule 1.7. As the board correctly points out, the critical inquiry is whether the lawyer has a competing interest or responsibility that "will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." *Id.* We add, because it is pertinent in the circumstances here, that "[c]onsideration should be given to whether the client wishes to accommodate the other interest involved." *Id.*

The board properly concluded that the respondent's personal and, for eight years, professional relationship with Costa materially limited his representation of Advanta. The hearing panel found that there was no evidence that the respondent encouraged Costa's efforts to secure a loan or that he played a role in her dealings with Advanta. Nonetheless, once Costa did secure

the loan, the respondent's friendship with her compromised his ability to protect Advanta's interests at the closing of the loan documents. As the board stated, the respondent was not accepting, at face value, the representations of a stranger that her spouse, in fact, had signed the documents. Had a stranger made such a representation, the respondent would have ascertained its veracity, thereby ensuring that Advanta would have no problems with the loan in the future. Because Costa was a friend, the respondent did not take that extra step of contacting her husband, relying instead solely on Costa's word. As a consequence, the respondent ended up notarizing a forged signature, thereby failing to protect Advanta's financial interests, and Costa eventually defaulted on the loan. We agree with the board that the respondent favored Costa's interests over those of his client and thereby violated Mass. R. Prof. C. 1.7 (b).

We take into consideration the fact that on her loan application, Costa listed the respondent as her employer. In her testimony before the hearing panel, Costa stated that she had spoken with Advanta specifically to ask if the respondent could serve as its attorney at the closing, and that "they didn't seem to have a problem with it." Costa also stated that she informed Advanta that she worked for the respondent. Pursuant to Advanta's request, Costa testified that she sent them a document showing that the respondent was covered by title insurance. Advanta then informed Costa that everything was in order. Costa told the respondent about her conversations with Advanta, concluding that everything was fine for the closing of the loan documents. Both the hearing panel and the board found that Costa had obtained Advanta's permission to use the respondent as the attorney for the closing of the loan documents. While the evidence suggests that Advanta may have wished to accommodate Costa's interests, this fact did not relieve the respondent of *his* obligation affirmatively to consult with Advanta and obtain its consent before undertaking the representation so as not to run afoul of rule 1.7 (b).

5. *Appropriateness of sanction.* When reviewing a disciplinary sanction, we consider whether the sanction "is markedly disparate from judgments in comparable cases." *Matter of Finn*, 433 Mass. 418, 423 (2001). See *Matter of Kerlinsky*, 428 Mass.

656, 664, cert. denied, 526 U.S. 1160 (1999); *Matter of Alter*, 389 Mass. 153, 156 (1983). "While this standard is relatively simple to state, it is one which is not always easy to apply because of factual nuances that distinguish cases from each other." *Matter of Shaw*, 427 Mass. 764, 768 (1998). Our review is de novo, but we give substantial deference to the recommendation of the board. See *Matter of Foley*, 439 Mass. 324, 333 (2003); *Matter of Finn, supra*. Ultimately, we decide each bar discipline case "on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances." *Matter of the Discipline of an Attorney*, 392 Mass. 827, 837 (1984). The overriding consideration in bar discipline is "the effect upon, and perception of, the public and the bar." *Matter of Kerlinsky, supra*, quoting *Matter of Finnerty*, 418 Mass. 821, 829 (1994). "We must consider what measure of discipline is necessary to protect the public and deter other attorneys from the same behavior." *Matter of Concemi*, 422 Mass. 326, 329 (1996).

Bar counsel correctly points out that disbarment — or, in some instances, indefinite suspension — is the usual and presumptive sanction for a lawyer who has committed a felony while in the course of practicing law. See *id.* (attorney disbarred after being convicted of thirty-five felonies, including conspiracy and bank fraud). See also *Matter of Ogan*, 424 Mass. 1015, 1016 (1997) (attorney disbarred after pleading guilty to one count of making false statement to federally insured institution where facts showed that attorney participated in thirty-three improper financial transactions); *Matter of Nickerson*, 422 Mass. 333, 337 (1996) (attorney indefinitely suspended after pleading guilty to fourteen counts of making false statements to federally insured bank). "For the most part, those attorneys who have received a suspension have escaped the greater sanction of disbarment or indefinite suspension due to special mitigating circumstances." *Matter of Concemi, supra* at 330 n.4.

The respondent contends that, while he admittedly pleaded guilty to one count of making a false statement to a federally insured bank, the circumstances here are more akin to those in "false notarization" cases, where disciplinary sanctions less severe than disbarment or indefinite suspension have been

imposed. See *Matter of Shaw*, 427 Mass. 764, 769-770 (1998) (attorney suspended for two years for making false statements under oath, filing false affidavit in court proceedings, and issuing false and misleading opinion letters signed under oath to which he forged notarization of another attorney). See also *Matter of Eastwood*, 10 Mass. Att'y Discipline Rep. 70, 74-75 (1994) (attorney suspended for one year after committing several ethical violations in handling real estate transactions, including notarizing buyer's signatures outside his presence). The respondent asserts that, because his ethical misconduct was an isolated incident that did not cause harm to anyone but himself, the appropriate disciplinary sanction is a public reprimand. See *Matter of Weitz*, 10 Mass. Att'y Discipline Rep. 286, 286-287 (1994) (attorney given public reprimand for notarizing forged signature, based on client's representation that wife had signed documents, where wife did not personally appear before attorney).

While we certainly do not minimize the nature of the respondent's misconduct, the cases cited by bar counsel dealt with far more egregious conduct than that in which the respondent engaged and, as such, do not constitute comparable or similar circumstances that would warrant disbarment or indefinite suspension. In a similar vein, the disciplinary sanction of a public reprimand has been reserved for those instances when the attorney notarizes a forged signature based on the representation of a *client* that the signature is genuine, presumably because the attorney has a good faith belief in the honesty of his client and is genuinely trying to be helpful. See *id.* Here, however, the respondent's client was Advanta, not Costa, and he had a duty to be vigilant about the circumstances surrounding the transaction. The fact that the respondent placed his confidence in the representation of a third party (Costa), to the detriment of his client, necessitates a harsher sanction than a public reprimand.

The board's conclusion that a two-year suspension was the appropriate disciplinary sanction was based, in large measure, on its determination that the respondent's relationship with Costa had created a conflict of interest in violation of Mass. R. Prof. C. 1.7 (b). However, we believe that the severity of this

conflict is tempered by the fact that Costa obtained Advanta's permission to use the respondent as the attorney for the closing of the loan documents, notwithstanding their personal relationship. The facts as found by the hearing panel showed that the respondent did not encourage or induce Costa to obtain the loan, did not engage in misconduct for personal gain, did not receive a fee or financial benefit for his services in closing the loan documents, and did not cause Advanta to suffer a financial loss. The hearing panel further found that the respondent had acted from a desire to help a long-time employee, and that his actions were not part of a pattern or practice of fraudulent conduct. Moreover, the respondent's misconduct was one isolated incident. Based on all of these considerations, we conclude that the appropriate sanction for the respondent is suspension from the practice of law for one year.

6. *Conclusion.* The case is remanded to the single justice for the entry of an order suspending the respondent from the practice of law for one year.

*So ordered.*