## IN THE MATTER OF THOMAS M. FINNERAN.

Suffolk. October 8, 2009. - January 11, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, BOTSFORD, & GANTS, JJ.

*Attorney at Law,* Disciplinary proceeding, Disbarment. *Board of Bar Overseers.*

Disbarment was the appropriate sanction to be imposed in a bar discipline case on the respondent, who pleaded guilty in the United States District Court to a charge of obstruction of justice, a felony, arising from false testimony the respondent gave at the trial of a voting rights lawsuit regarding the role he played as Speaker of the House of Representatives in a redistricting plan that was found to violate the Voting Rights Act by diluting the voting power of African-American voters, where precedents in prior bar disciplinary matters involving an attorney convicted of obstruction of justice or a similar felony related to providing false testimony to a tribunal pointed to disbarment or, to a lesser degree, indefinite suspension as the appropriate level of discipline [730-733]; where the respondent's conduct was not excused from the presumptive sanction by the fact that the crime did not involve the practice of law [733-735]; where the absence of an evil motive or racial animus and the evidence of the respondent's exemplary private life (i.e., the respondent's long and distinguished career of public service and many pro bono services that focused on the community he represented) did not rise to the level of special mitigating factors that might warrant a downward departure from the presumptive sanction [735-736]; and where the circumstances of the respondent's crime did not diminish the significance of the felony that he committed [736-737]; moreover, disbarment, rather than indefinite suspension, was warranted given that the respondent's misconduct implicated both the integrity of the judicial system and the honesty of a member of the bar [737-739].

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on January 12, 2007.

The case was reported by *Botsford*, J.

*Arnold R. Rosenfeld* for the respondent.

*Nancy E. Kaufman*, First Assistant Bar Counsel.

BOTSFORD, J. This bar discipline matter comes before the court on a reservation and report by a single justice, without decision. The respondent, Thomas M. Finneran, a former Speaker of the Massachusetts House of Representatives, pleaded guilty on

January 5, 2007, in the United States District Court for the District of Massachusetts to a charge of obstruction of justice, in violation of 18 U.S.C. § 1503 (2000).[1] The specific charge was that the respondent wilfully had made misleading and false statements under oath while testifying in his capacity as Speaker in a Federal voting rights lawsuit. A hearing panel of the Board of Bar Overseers (board) recommended that the respondent be suspended from the practice of law for two years and undergo a reinstatement hearing prior to reinstatement to the bar. Both the respondent and bar counsel appealed to the board from the hearing panel's report; a majority of the board recommended that the respondent be disbarred, with one member dissenting. We accept the recommendation of the board's majority and remand the case to the county court where a judgment of disbarment shall enter.

1. *Background.* The following is drawn from the findings of the hearing panel and the exhibits that were before it,[2] as well as the report of the board. The respondent was admitted to the practice of law in the Commonwealth on December 18, 1978. That same year he was first elected to serve in the Massachusetts House of Representatives (House), representing the Mattapan section of Boston. The respondent served as the elected representative of that district — the Twelfth Suffolk District — for over twenty-six years. During his tenure, he served as chairman of the House committee on banking, chairman of the House committee on ways and means, and, beginning in 1996, he was elected five times by his fellow representatives to the position of Speaker of the House. He served in that capacity until his resignation from the House in 2005.

In 2001, the Massachusetts Legislature undertook a process

---

[1]Title 18 U.S.C. § 1503 (2000) provides in relevant part:

"(a) Whoever corruptly . . . influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b). . . .

"(b) The punishment for an offense under this section is — . . . (3) . . . imprisonment for not more than 10 years, a fine under this title, or both."

[2]The Board of Bar Overseers (board) adopted the hearing panel's subsidiary findings of fact.

to redraw the boundaries of the electoral districts for the House and the Massachusetts Senate; these efforts culminated in the passage of St. 2001, c. 125 (2001 Redistricting Act).[3] In June of 2002, an organization named the Black Political Task Force and other organizations and individuals representing or comprising African-American and Latino voters in Boston filed a civil action in the Federal District Court (voting rights lawsuit). The voting rights lawsuit named the respondent as a defendant in his official capacity as Speaker, and alleged that the 2001 Redistricting Act, as it related to House seats in Suffolk County, contravened the Fourteenth and Fifteenth Amendments to the United States Constitution and § 2 of the Federal Voting Rights Act, 42 U.S.C. § 1973(b). Specifically, the plaintiffs alleged that although in 2000 Boston's minority population constituted over fifty per cent of the city's total population, the 2001 Redistricting Act "eliminated two majority-minority districts, reduced the minority population in one district, and 'super-packed' another district so that it contains a voting age population that is [ninety-eight per cent] minority." It was further alleged that the 2001 Redistricting Act gerrymandered and diluted minority voting strength and created a number of majority-white districts greater than justified by the percentage of white voters in the city's voting age population.

Although the respondent was subsequently dismissed as a defendant,[4] the plaintiffs sought to establish that he played a key role in developing the 2001 Redistricting Act and contributed to the redrawing of the boundaries of his own district. The respondent was deposed in the voting rights lawsuit on March 28, 2003, and voluntarily testified at trial on November 14, 2003, before a three-judge panel assigned to hear the case. See

[3]This work was done in the wake of the 2000 decennial census. The Massachusetts Legislature established a joint special committee on redistricting and reapportionment (joint committee) to review and redraw legislative districts and formulate revisions to reflect an increase in and shifting residential patterns of the Commonwealth's population. As Speaker of the Massachusetts House of Representatives (House), the respondent appointed Representative Thomas M. Petrolati to chair the joint committee. See *Black Political Task Force* v. *Galvin*, 300 F. Supp. 2d 291, 294-295 (D. Mass. 2004).

[4]By the time the trial commenced in November, 2003, the Secretary of the Commonwealth of Massachusetts was the sole defendant. Like the respondent, he was named as a defendant only in his official capacity.

28 U.S.C. § 2284(a) (2000). In his trial testimony,[5] the respondent diminished or denied the extent of his involvement in the redistricting process by claiming he had no substantive knowledge of the development of the redistricting plan. He also asserted that he had not seen a redistricting plan before the final plan was filed with the clerk of the House of Representatives (House clerk) on October 18, 2001. More specifically, the respondent provided the following answers during his testimony:

> *Q.*: "And did you review a number of the redistricting plans as the process proceeded?"
>
> *A.*: "No, I did not."
>
> *Q.*: "Did you review any of the redistricting plans as the process proceeded?"
>
> *A.*: "Not as the process proceeded. No, sir."
>
> *Q.*: "Okay. When was the first time you saw a redistricting plan?"
>
> *A.*: "It would have been after the committee on redistricting filed its plan with the House Clerk as a member who has an interest. I would have availed myself of it and made a review of it."
>
> *Q.*: "So the first time you saw a redistricting plan was when the redistricting committee disseminated its plan to the full House; is that your testimony?"
>
> *A.*: "That is my testimony. Yes, sir."[6]

---

[5]This court is concerned with the respondent's trial testimony that resulted in his obstruction of justice conviction. We note, however, that the board found that his March 28, 2003, deposition testimony provided the same false and misleading statements concerning his awareness of the redistricting plan that he repeated during the voting rights trial in November, 2003.

[6]The testimony quoted in the text was included in the portion of the indictment to which the respondent ultimately pleaded guilty. As the assistant United States attorney stated in the course of the hearing on the respondent's guilty plea, the United States Attorney's investigation revealed that prior to the filing of the redistricting plan with the House clerk on October 18, 2001, the respondent: had numerous conversations with the chairman of the joint

The plaintiffs in the voting rights lawsuit ultimately prevailed: the three-judge panel concluded that the 2001 Redistricting Act violated § 2 of the Voting Rights Act by diluting the voting power of African-American voters. See *Black Political Task Force* v. *Galvin*, 300 F. Supp. 2d 291, 316 (D. Mass. 2004). Of relevance here is a footnote in the panel's decision that stated: "Although Speaker Finneran denied any involvement in the redistricting process, the circumstantial evidence strongly suggests the opposite conclusion." *Id.* at 295 n.3.

On June 6, 2005, the respondent was charged in the United States District Court for the District of Massachusetts in a four-count indictment that alleged he committed three counts of perjury in violation of 18 U.S.C. § 1623 (2000), and one count of obstruction of justice in violation of 18 U.S.C. § 1503; the indictment based these charges on the respondent's responses to discovery, deposition testimony, and trial testimony in the voting rights lawsuit. On January 5, 2007, pursuant to a plea agreement with the government, the respondent pleaded guilty to the obstruction of justice charge contained in count four of the indictment.[7] During the plea colloquy, as the hearing panel of the board specifically noted in its report, the assistant United States attorney stated that this charge was unlike other obstruction of justice charges: the false testimony did not occur in the context of a criminal investigation or trial, it was not designed to conceal a crime committed by another individual or to conceal

committee on redistricting and also with the expert consultant on redistricting who had been hired by the House at the respondent's request; was involved in virtually all of the difficult decisions made with regard to the redistricting plan; convened and attended a redistricting working session with all the key participants on October 9, 2001, during which the respondent was shown, reviewed, and commented on a complete redistricting plan; approved all significant alterations to the redistricting plan after the October 9 working session and prior to its filing with the House clerk; and held separate meetings with the representatives from Worcester, Lowell, and Newton to explain the contours of the redistricting plan to those legislators.

[7]Specifically, the respondent's guilty plea related to paragraph 18 of count four of the indictment, which alleged that he corruptly endeavored to influence, obstruct, or impede the due administration of justice in that he knowingly and wilfully made misleading and false statements under oath in the United States District Court for the District of Massachusetts during his testimony at trial in the voting rights lawsuit. Paragraph 18 sets out the particular portion of the respondent's testimony that we have earlier quoted in the text. See note 6 and accompanying text, *supra.*

the whereabouts of a fugitive, and it did not result in financial gain to the respondent.[8] Following the assistant United States attorney's remarks, the judge before whom the plea was offered noted the seriousness of the offense, particularly given the fact that the respondent was an active member of the Massachusetts bar, but he also pointed to the lack of evil motive, the absence of racial animus, the aberrant nature of the offense, the respondent's career in public service, contributions to the community at large, and exemplary private life. Based on these considerations, the judge adopted the recommended sentence contained in the plea agreement. The respondent was placed on unsupervised probation for eighteen months, fined $25,000, and agreed not to run for local, State, or Federal office for five years.[9] The remaining counts of the indictment were dismissed.

Following the respondent's conviction, on January 23, 2007, by agreement a single justice ordered the temporary suspension

---

[8] In addressing the obstruction of justice charge, the assistant United States attorney stated:

"[O]n the one hand, this was an obstruction of justice committed by a state legislative leader[] while testifying in his official capacity before a federal court. It is critical, in order to preserve the constitutional balance of powers, that our legislative leader[s] remain accountable not only to the voters at the ballot box, but when called to testify before the judicial branch, the fundamental heart of this prosecution. Moreover, the defendant's obstruction of justice came in the context of a lawsuit brought by minority voters over one of our most fundamental rights; that is, the right to vote and to elect representatives of our choice. And, finally, this obstruction was committed by a member of the bar, an individual obligated by his profession to address the court with utmost candor. . . .

"On the other hand, . . . the obstruction of justice in this case was unlike almost any other obstruction we see in this courthouse. This is not a case in which a defendant obstructed justice in the context of a criminal investigation, that is, a grand jury investigation. It is not a case where the defendant obstructed justice in the course of testifying in a criminal trial. Therefore, his obstruction was not designed to conceal a crime which he committed, nor was it designed to conceal a crime committed by another individual. . . . In addition, this obstruction was not aimed at, nor did it result in, any financial gain to the defendant."

[9] The judge considered himself without authority to order the respondent to refrain from seeking public office, however the respondent agreed to such a condition as part of the plea arrangement.

of the respondent's license to practice law. On March 13, 2007, bar counsel filed a petition for discipline against the respondent. The hearing panel of three board members conducted a hearing on the petition on December 17 and 18, 2007, and issued its report on October 21, 2008. In addition to the facts previously recited, the hearing panel found that the respondent accepted personal responsibility for the actions that led to his indictment and guilty plea, expressed genuine remorse and regret, and admitted that his failure to be forthcoming in his testimony was affected by his resentment, agitation, and anger at the accusation that he would be a party to a racially motivated redistricting scheme. The panel also recognized the respondent's service of over twenty-six years in the Massachusetts House as well as his many charitable and community-oriented activities.[10]

The hearing panel concluded that the respondent's conduct and plea of guilty to the charge of obstruction of justice violated Mass. R. Prof. C. 3.3 (a) (1), 426 Mass. 1383 (1998) (lawyer shall not knowingly make false statement of material fact or law to tribunal); Mass. R. Prof. C. 8.4 (b), 426 Mass. 1429 (1998) (lawyer shall not engage in criminal act that reflects adversely on lawyer's honesty, trustworthiness, or fitness as lawyer); Mass. R. Prof. C. 8.4 (c), 426 Mass. 1429 (1998) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentations); and Mass. R. Prof. C. 8.4 (d), 426 Mass. 1429 (1998) (lawyer shall not engage in conduct that is prejudicial to administration of justice). The panel found no aggravating factors, but found in mitigation that on the day of the respondent's testimony in the voting rights lawsuit, his severe physical pain related to his hip, coupled with his concern for his wife's health, diminished his ability to focus, contributed to the misleading character of the testimony, and led to his aberrant conduct.

The panel recognized that the respondent's plea of guilty to the felony charge of obstruction of justice constituted a "conviction" of a "serious crime" within the meaning of S.J.C. Rule

---

[10]As examples of his charitable and community work, the hearing panel mentioned the respondent's involvement in the Dorchester YMCA; the Pop Warner program in Mattapan, including the associated cheerleading program; the Mattapan Community Health Center; the Codman Square Health Center; and the Mattapan Community Development Corporation.

4:01, § 12 (1) and (3), as appearing in 425 Mass. 1313 (1997),[11] for which the presumptive sanction was disbarment or indefinite suspension. Nonetheless, the panel found that the respondent's misconduct occurred while acting as a private citizen and not while he was engaged in the practice of law, and further that, because of the mitigating circumstances of the case and the private citizen exception, a substantial deviation from the presumptive sanction was appropriate. The panel recommended that the respondent be suspended from the practice of law for two years and undergo a reinstatement proceeding prior to his reinstatement to the bar.

Both parties appealed to the board. On March 9, 2009, the board issued its memorandum of decision, adopting the hearing panel's subsidiary findings of fact and conclusions of law but modifying the hearing panel's proposed disposition. The board recommended that the respondent be disbarred, retroactive to the effective date of his temporary suspension. It concluded: the respondent's conviction related to a serious crime; his distinguished career was not enough to deviate from what the board described as the presumptive sanction of disbarment; the respondent's own testimony dispelled any conclusion that he could not focus due to his hip pain or concern for his wife[12]; the private citizen exception did not apply; the trial in which the respondent endeavored to obstruct related to fundamental voting rights of citizens of color; and the effect on and perception of the bar and of the public required disbarment. One member of the board dis-

---

[11]Supreme Judicial Court Rule 4:01, § 12 (1), as appearing in 425 Mass. 1313 (1997), provides: "The term 'conviction' shall include any guilty verdict or finding of guilt and any admission to or finding of sufficient facts and any plea of guilty or nolo contendere which has been accepted by the court, whether or not sentence has been imposed."

Supreme Judicial Court Rule 4:01, § 12 (3), as appearing in 425 Mass. 1313 (1997), provides: "The term 'serious crime' shall include (a) any felony, and (b) any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime, includes interference with the administration of justice, false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy, or solicitation of another, to commit a 'serious crime.' "

[12]The board did not discredit the respondent's testimony concerning his hip pain or his concern for his wife, but it found that these circumstances did not cause the respondent to lose focus while testifying.

sented, finding that the hearing panel's recommendation of a two-year suspension with the requirement of a reinstatement hearing was more consistent with this court's precedent and the public interest.

The board caused an information to be filed in the county court on March 20, 2009, in accordance with S.J.C. Rule 4:01, § 8 (4), as appearing in 425 Mass. 1309 (1997). The single justice thereafter reserved and reported the case to the full court.

2. *Discussion.* In bar disciplinary cases where a single justice has reserved and reported the case to the full court, we review the matter and "reach our own conclusion." *Matter of Wainwright*, 448 Mass. 378, 384 (2007), quoting *Matter of Fordham*, 423 Mass. 481, 487 (1996), cert. denied, 519 U.S. 1149 (1997). We recognize that the hearing panel is the sole judge of the credibility of the testimony presented at the hearing. S.J.C. Rule 4:01, § 8 (4). See *Matter of Saab*, 406 Mass. 315, 328 (1989). Regarding the board, although its findings and recommendations are not binding on the court, they are "entitled to great weight." *Matter of Fordham*, *supra*, citing *Matter of Hiss*, 368 Mass. 447, 461 (1975).

In the present case, there is no dispute between the parties that the respondent has been convicted of a felony and therefore a "serious crime," and there is no dispute that his conduct violated the rules of professional conduct cited by the hearing panel and the board: Mass. R. Prof. C. 3.3 (a) (1), 8.4 (b), (c), and (d). Their dispute concerns the appropriate sanction. The respondent argues that a term suspension constitutes appropriate discipline and is consistent with our precedent when the special mitigating circumstances present are taken into account. Bar counsel argues that disbarment is the only appropriate sanction.

We turn immediately, therefore, to the issue of sanction. Because the sanction imposed in comparable cases is a critical consideration, see, e.g., *Matter of Balliro*, 453 Mass. 75, 85 (2009), we consider first the disposition of cases where an attorney has been convicted of a felony. We have repeatedly confirmed that "disbarment or indefinite suspension is the usual sanction imposed for a felony conviction." *Matter of Concemi*, 422 Mass. 326, 329 (1996), citing *Matter of Knox*, 412 Mass. 569 (1992).

See *Matter of Driscoll*, 447 Mass. 678, 688 (2006); *Matter of Otis*, 438 Mass. 1016, 1017 (2003); *Matter of Grella*, 438 Mass. 47, 52-53 (2002); *Matter of Goldberg*, 434 Mass. 1022, 1023 (2001); *Matter of Kennedy*, 428 Mass. 156, 158 (1998); *Matter of Labovitz*, 425 Mass. 1008, 1009 (1997); *Matter of Nickerson*, 422 Mass. 333, 337 (1996).

Even more specific than felony convictions, we must consider prior bar disciplinary matters where an attorney was convicted of obstruction of justice or a similar felony related to providing false testimony to the tribunal.[13] In most instances, disbarment has resulted. See *Matter of Labovitz*, 425 Mass. at 1008-1009 (attorney disbarred after pleading guilty to thirteen felony charges involving bankruptcy fraud, diversion and concealment of as-

---

[13]In recommending that the respondent be suspended for two years, the hearing panel analogized this matter to cases where lawyers gave false testimony under oath but were not charged with and convicted of a crime. In these instances, a two-year suspension has been the usual and presumptive sanction. See, e.g., *Matter of Shaw*, 427 Mass. 764 (1998) (two-year suspension imposed on attorney who knowingly testified falsely, filed false affidavit in court proceedings, issued false and misleading opinion letters, and forged notarization of another attorney); *Matter of O'Donnell*, 23 Mass. Att'y Discipline Rep. 508, 514 n.3 (2007) ("presumptive sanction for lying under oath is a two-year suspension"). In terms of presumptive sanction, our cases distinguish significantly between a lawyer who is convicted of a felony, whether or not it involves the provision of false or misleading testimony under oath, and a lawyer who is not convicted of a crime but is found by the hearing panel or board to have provided false or misleading testimony under oath. Compare, e.g., *Matter of Concemi*, 422 Mass. 326, 329 (1996) ("We start with the premise that disbarment or indefinite suspension is the usual sanction imposed for a felony conviction"), with *Matter of Shaw*, *supra*, and *Matter of O'Donnell*, *supra*. There is no question that the fact of a conviction is relevant to the determination of the appropriate disciplinary sanction, but it is not self-evident why the fact of a conviction alone justifies the substantial disparity in the usual or presumptive discipline imposed. Giving false or misleading testimony to a tribunal, regardless whether a criminal prosecution for perjury or obstruction of justice occurred, relates to the "fundamental tenets of [the] oath of office and of [the lawyer's] ethical obligations." *Matter of Balliro*, 453 Mass. 75, 89 (2009). Nevertheless, we do not need to resolve here the related questions whether (1) the presumptive sanction of disbarment or indefinite suspension for a felony conviction where the felony does not involve false testimony under oath is too great; and (2) the presumptive sanction of two years for testifying falsely before a tribunal, where no criminal conviction occurred, is too little. This case involves a conviction of obstruction of justice based on the giving of false or misleading testimony in a court, and, as we discuss *infra*, the presumptive sanction of disbarment or indefinite suspension remains appropriate.

sets, intentional fraud, and perjury); *Matter of McCarthy*, 18 Mass. Att'y Discipline Rep. 380 (2002) (attorney disbarred after conviction of obstructing Securities and Exchange Commission proceeding by instructing employees in law firm to delete information from computer files and lying under oath); *Matter of Cintolo*, 6 Mass. Att'y Discipline Rep. 54 (1990) (attorney disbarred after conviction of conspiracy to obstruct justice); *Matter of Norton*, 5 Mass. Att'y Discipline Rep. 272 (1987) (attorney disbarred after convictions of conspiracy to defraud United States, falsely testifying before grand jury, and obstruction of justice). In only one instance has this court imposed an indefinite suspension rather than disbarment as the appropriate disciplinary sanction for an attorney convicted of obstruction of justice or a similar felony. See *Matter of Colson*, 1 Mass. Att'y Discipline Rep. 64, 64, 67-69, 73 (1975) (attorney, who was special counsel to President of United States, indefinitely suspended after pleading guilty to one count of obstruction of justice; single justice recognized attorney's unusual relationship with President and sincere belief that actions were in interests of national security). Imposing disbarment on an attorney convicted of obstructing justice or providing false testimony is in accordance with the American Bar Association's standards for imposing lawyer sanctions. See ABA Standards for Imposing Lawyer Sanctions § 5.11(a) (1992) (disbarment appropriate sanction for lawyer who engages in criminal conduct involving intentional interference with administration of justice). See also *id.* at § 6.11 (disbarment is generally appropriate where lawyer, with intent to deceive court, makes false statement, submits false document, or improperly withholds material information, and causes serious or potentially serious injury to party or has adverse effect on legal proceeding).[14]

These precedents point to disbarment or, to a lesser degree,

---

[14]Neither party has directed the court to a Massachusetts bar disciplinary case in which an attorney has been convicted of a crime of obstruction of justice or providing false testimony under oath to a tribunal where disbarment or indefinite suspension has not been imposed. Nevertheless, we acknowledge the presence of prior bar disciplinary matters where an attorney has been convicted of providing a false statement of some kind and received a term suspension. See *Matter of Driscoll*, 447 Mass. 678 (2006) (one-year suspension for attorney who pleaded guilty to one count of making a false statement to a bank); *Matter of Alter*, 389 Mass. 153 (1983) (two-year suspension for at-

indefinite suspension as the appropriate level of discipline in this case. However, we have recognized the importance of the "factual nuances" in each case, *Matter of Shaw*, 427 Mass. 764, 768 (1998), and we do not impose a particular level of discipline without considering each bar disciplinary matter on its own merits. *Matter of Balliro*, 453 Mass. at 85-86, quoting *Matter of the Discipline of an Attorney*, 392 Mass. 827, 837 (1984).

The respondent urges the court to weigh several mitigating factors that he believes are present in his case and together require a significant downward departure from the usual and presumptive sanction to a term suspension. In this regard, he argues that his conviction of obstruction of justice did not occur in the practice of law, and this fact alone distinguishes his case from most all of the cases in which this court has ordered a sanction of disbarment or indefinite suspension for obstruction of justice or providing false testimony.[15] He points out that the court has expressly stated that misconduct "directly related to the practice of law" is generally treated more harshly than misconduct taking place in another setting, see *Matter of Barrett*, 447 Mass. 453, 465 (2006); *Matter of Concemi*, 422 Mass. at 331, and that "disbarment — or in some instances, indefinite suspension — is the usual and presumptive sanction for a lawyer who has committed a felony *while in the course of practicing law*" (emphasis added). *Matter of Driscoll*, 447 Mass. 678, 688 (2006). The respondent claims that because he was not represent-

torney who pleaded guilty to concealing information and making false statement to the Social Security Administration for the purpose of obtaining Social Security payments after mother's death). *Driscoll* and *Alter* are distinguishable from the present case because the false statements issued by the respondents were not directed to the court itself. Lying under oath to a tribunal is so fundamentally at odds with a lawyer's ethical obligations that we do not consider prior disciplinary matters that involve making a false statement to, for example, a bank or a federally insured institution as directly comparable. Moreover, we have imposed a sanction of disbarment or indefinite suspension in a number of cases where the attorney was convicted of providing a false statement to an institution other than a court. See *Matter of Doyle*, 429 Mass. 1013 (1999); *Matter of Kennedy*, 428 Mass. 156 (1998); *Matter of Ogan*, 424 Mass. 1015 (1997); *Matter of Nickerson*, 422 Mass. 333 (1996).

[15]See, e.g., *Matter of Labovitz*, 425 Mass. 1008 (1997); *Matter of McCarthy*, 18 Mass. Att'y Discipline Rep. 380 (2002); *Matter of Cintolo*, 6 Mass. Att'y Discipline Rep. 54 (1990); *Matter of Norton*, 5 Mass. Att'y Discipline Rep. 272 (1987). See also *Matter of Colson*, 1 Mass. Att'y Discipline Rep. 64 (1975).

ing a client at the time he provided the false or misleading testimony and, further, because his testimony was unrelated to his practice of law, he should not be sanctioned as severely as a respondent who acted as a lawyer.

We disagree. We have generally concluded that crimes (and sometimes unprosecuted acts of misconduct) involving interference with the administration of justice generally do not qualify for a lesser sanction on the ground that the lawyer was not representing a client or directly engaged in the practice of law at the relevant time. Thus, in *Matter of Labovitz*, 425 Mass. at 1008, the respondent urged that his ethical violations — felony convictions of bankruptcy fraud, intentional fraud, and perjury — occurred while conducting personal business and not in the practice of law. The court found that the exception could not apply to a situation where "an attorney has knowingly and repeatedly, with the intent to deceive, misrepresented facts to a tribunal." *Id.* at 1008 n.1. In *Matter of Otis*, 438 Mass. 1016 (2003), where the respondent had been convicted of one count of conspiracy to commit bankruptcy fraud, we refused to impose a lesser sanction than disbarment even though her misconduct did not involve clients or the practice of law. *Id.* at 1017 n.3. The fact that the respondent's conviction involved "fraud in connection with judicial proceedings" was enough to bar application of the exception. *Id.* See *Matter of Hyatt*, 23 Mass. Att'y Discipline Rep. 309, 311 (2007) (private citizen exception not applicable to respondent convicted of multiple crimes because his misconduct affected due "administration of justice").[16]

_____

[16]See also *Matter of Balliro*, 453 Mass. at 88 (nonconviction case; court stated that seriousness of false testimony cannot be "downplayed simply by saying that the matter . . . was a private one"; attorney suspended for six months in light of compelling mitigating circumstances); *Matter of Ring*, 427 Mass. 186, 192, 193 (1999) (nonconviction case; respondent suspended for three months after disobeying several court orders and contempt adjudications issued against him in his own divorce proceedings; court determined respondent's argument that his actions involved private matter was "patently without merit" because his misconduct "concerned his disobedience of court orders"); *Matter of Finnerty*, 418 Mass. 821, 829-830 (1994), citing *Matter of Palmer*, 413 Mass. 33, 39 (1992), and *Matter of Neitlich*, 413 Mass. 416, 423 (1992) (nonconviction case; respondent made false statements on financial disclosures in own divorce proceeding; court stated, " 'we cannot approve of any practice in which an attorney misleads a court.' . . . 'Were we to condone such conduct by an attorney, whether as a litigant or as counsel, the integrity of the judicial process would be vitiated' ").

Because the respondent was testifying under oath in a judicial proceeding in his official capacity as a member of the House, his conviction of obstruction of justice places his case squarely within this group of cases. No exception from the presumptive sanction applies to him based on the fact that the crime did not involve the practice of law.[17]

The respondent further points to the unique aspects of his obstruction of justice charge and mitigating factors highlighted by the assistant United States attorney and the judge during the respondent's plea hearing as reasons that compel a term suspension rather than disbarment or indefinite suspension.[18] The hearing panel emphasized these factors in determining that a substantial downward departure from the presumptive sanction was appropriate in this case. We accept and recognize the respondent's long and distinguished career of public service and his many pro bono services that have focused on the community he represented in the House, and we further accept that the respondent's conduct was not animated by evil motive or racial animus. But these considerations, while clearly relevant to the question of criminal sentencing, do not generally qualify as the types of special mitigating circumstances, *Matter of Driscoll*, 447 Mass. at 688, that we have pointed to as reasons for not applying a presumptive level of disciplinary sanction. Rather, our bar discipline cases have recognized most of these considerations as " 'typical' mitigating circumstances," *Matter of Alter*, 389 Mass. 153, 157 (1983), that, while relevant, do not affect the presumptive sanction. See generally *Matter of Saab*, 406 Mass. 315, 327 (1989) (typical mitigating evidence generally not given substantial weight).[19] The considerations involved

---

[17]The hearing panel determined that the respondent's conduct had taken place while he was acting as a private citizen and not in the practice of law. We have in some cases recognized that purely private misconduct by attorneys while acting as "private citizens" may warrant less severe discipline than misconduct occurring in the practice of law. See *Matter of Concemi*, 422 Mass. at 331 n.5. See also *Matter of Labovitz*, 425 Mass. at 1008 n.1, and cases cited. The respondent in this case was not directly engaged in the practice of law, but his misconduct was not "purely 'private,' " *id.*, and no private citizen exception applies.

[18]Those factors are summarized in the background section of this opinion. See note 8 and accompanying text, *supra*. The respondent adds to this list the fact that his testimony had "no effect on the outcome of the case."

[19]In this regard, see *Matter of Bailey*, 439 Mass. 134, 151 (2003) (fact that

in this case that our prior cases have not directly addressed — mainly, the absence of an evil motive or racial animus and evidence of an exemplary private life — do not, in our view, rise to the level of special mitigating factors.[20] The respondent's absence of evil motive or racial animus is not dissimilar to the lack of dishonesty listed in *Matter of Alter*, 389 Mass. 153, 157 (1983), as a typical mitigating factor. While we acknowledge that if the circumstances were reversed and the respondent had acted on the basis of an evil or racist motive, it would constitute a matter in aggravation, we cannot say that their absence represents a special factor in the respondent's favor. And the respondent's exemplary private life is comparable to his distinguished career or devotion to his constituents: each is highly admirable, but not so extraordinary that it should mitigate the presumptive sanction for a lawyer who is convicted of obstruction of justice.

We also recognize that the obstruction of justice at issue here was one that arose in connection with a civil rather than a criminal case, that the respondent was not seeking to cover up a crime that he or another person had committed, and that there was no financial gain or motive underlying his criminal conduct. Admittedly, these circumstances distinguish the respondent's conviction from other, more typical convictions under the same Federal statute. On the other hand, even the respondent does not challenge that his conduct constituted a "serious crime" as

false testimony did not have material effect on proceedings did not "serve to mitigate the seriousness of [the] violation"); *Matter of Otis*, 438 Mass. at 1017 n.3 (frequent pro bono representation of indigent clients and lack of prior record of discipline do not mitigate misconduct); *Matter of Kennedy*, 428 Mass. 156, 159 (1998) ("Community service, pro bono representation of clients, and a favorable reputation in the community are commendable, but they cannot alone offset the consequences of serious unethical conduct which otherwise calls for disbarment"); *Matter of Budnitz*, 425 Mass. 1018, 1019 (1997) (no prior discipline as member of Massachusetts bar for eighteen years is mere typical mitigating factor); *Matter of Concemi*, 422 Mass. at 330 (reputation in community no justification for less substantial sanction); *Matter of Alter*, 389 Mass. at 157 (absence of any dishonesty, otherwise excellent reputation in community, satisfactory record at bar and absence of harm as a result of misconduct are listed as typical mitigating factors).

[20]Special mitigating factors identified in our case law have focused on serious physical or psychological conditions affecting the attorney's capacity to act in accordance with legal and ethical obligations. See, e.g., *Matter of Concemi*, 422 Mass. at 330 n.4, and cases cited; *Matter of Alter*, 389 Mass. 153, 157 n.2 (1983), and cases cited. As the board noted, the respondent himself indicated that this is not such a case.

defined by this court's rules. See S.J.C. Rule 4:01, § 12 (3). More to the point, as this court recently emphasized, "we cannot condone the actions of an attorney in giving false testimony under oath, *irrespective of the circumstances*" (emphasis added). *Matter of Balliro*, 453 Mass. at 89. The crime of which the respondent stands convicted required proof that he had the specific intent to mislead the court and thereby interfere with the administration of justice. That the circumstances of the respondent's crime suggest it was not as egregious as in other cases does not diminish the significance of the felony the respondent did commit.

Thus, we find no persuasive reason not to impose the presumptive sanction of disbarment or indefinite suspension.[21] The final task, therefore, is to decide which of these two alternatives provides the most appropriate disposition.[22] To make this determination, we turn to the primary factor for consideration in all bar discipline cases, "the effect upon, and perception of, the public and the bar."[23] *Matter of Finnerty*, 418 Mass. 821, 829 (1994), quoting *Matter of Alter*, 389 Mass. at 156. See *Matter*

[21]The dissenting member of the board, in recommending a two-year suspension, stated that the "critical facts" for purposes of attorney discipline in this matter were that: the respondent's conduct did not occur in the context of an independent crime; the respondent's conduct occurred in a civil context; there were no victims of the respondent's conduct apart from himself; the respondent's history reflects conduct marked by integrity and honesty; the respondent was not engaged in the practice of law; and the respondent's conduct did not result in any personal financial gain. For the reasons discussed in detail *supra*, we have considered but here rejected the conclusion that these factors, singularly or together, represent the critical facts relevant to the appropriate disposition.

[22]A lawyer who has been disbarred may not petition for reinstatement until the expiration of at least eight years from the effective date of the order of disbarment, while a lawyer who has been suspended for an indefinite period may not petition for reinstatement until the expiration of at least five years from the effective date of the order of suspension. See S.J.C. Rule 4:01, § 18 2 (a) and (b), as appearing in 430 Mass. 1329 (2000).

[23]In assessing the effect on and perception of the bar, we are mindful that, as indicated *supra*, in prior bar disciplinary matters involving an attorney convicted of obstruction of justice or providing false testimony under oath to a tribunal, the court, and single justices have imposed the sanction of disbarment far more frequently than indefinite suspension. Compare *Matter of Labovitz*, 425 Mass. at 1008; *Matter of McCarthy*, 18 Mass. Att'y Discipline Rep. at 380; *Matter of Cintolo*, 6 Mass. Att'y Discipline Rep. at 54; and *Matter of Norton*, 5 Mass. Att'y Discipline Rep. at 272, with *Matter of Colson*, 1 Mass. Att'y Discipline Rep. at 64.

*of Barrett,* 447 Mass. at 463; *Matter of Segal,* 430 Mass. 359, 367 (1999); *Matter of Doyle,* 429 Mass. 1013, 1014 (1999); *Matter of Nickerson,* 422 Mass. 333, 337 (1996). The hearing panel credited the testimony of the respondent's several character witnesses, who stated in effect that the respondent's criminal conduct was aberrant and out of character, the respondent was remorseful, he had been sanctioned or punished enough by virtue of his conviction and his suspension from the practice of law, and a relatively short-term suspension would not have an adverse impact on public perception of the bar. The dissenting member of the board agreed with this analysis of impact on public perception.[24] The board did not. In the board's view, a departure from what it saw as the "usual sanction of disbarment" in a case where the respondent had "lied about his own actions as a public official in federal court[] and which endeavored to obstruct a meritorious action to vindicate the voting rights of people of color" would likely be outrage.

The respondent's misconduct implicates both the integrity of the judicial system and the honesty of a member of the bar.[25] We have no reason to disagree with the finding that the respondent's

[24]The dissenting member also stated that the public "will not be outraged by the imposition of a sanction which is commensurate with [the respondent's] ethical obligations and acknowledged character, rather than based solely on this aberration in his character." In substance, the dissenting member reflects the view that the respondent has been punished enough by paying a fine, being placed on probation, and agreeing not to run for office for five years. In ordering disbarment, we do not suggest that the sanctions imposed in the criminal context are insignificant, but the purpose of bar disciplinary matters is to serve interests that are separate and distinct from the interests served by the criminal justice system.

[25]See *Matter of Balliro,* 453 Mass. at 88-89 ("All attorneys, whether those of long standing or those recently admitted to the Massachusetts bar, are expected to know and understand their professional obligation to be truthful in court. It is a simple and unambiguous standard of ethical conduct, and the respondent violated it"). See also *Matter of Bailey,* 439 Mass. 134, 151 (2003) ("An attorney's giving false testimony under oath, by itself, can justify disbarment"); *Matter of Budnitz,* 425 Mass. at 1018-1019 (lawyer who lied under oath disbarred; lawyer not convicted of perjury, obstruction of justice, or providing false testimony); *Matter of Palmer,* 423 Mass. 647, 650 (1996) ("The attorney's serious and documented perjury by itself could justify his disbarment"); *Matter of Sleeper,* 251 Mass. 6, 20 (1925) ("There is no room in the profession of the law for those who commit deliberate falsehood in court"); *Matter of Norton,* 5 Mass. Att'y Discipline Rep. 272, 273 (1987) (noting that crimes of conspiracy to defraud United States, falsely testifying

conduct during the voting rights lawsuit represented an aberrant event in his long career of serving his constituency and the public with loyalty and distinction. But the respondent was convicted of a serious crime involving false testimony to a court under oath in a significant case about fundamental rights. We share the board's view, which is "entitled to substantial deference," *Matter of Tobin*, 417 Mass. 81, 88 (1994), that the public perception of the bar would be gravely damaged if this court were to impose a sanction less than the generally applicable one of disbarment.

3. *Conclusion.* This case is remanded to the single justice for entry of an order disbarring the respondent from the practice of law. The disbarment shall be effective retroactive to January 23, 2007, the date of the respondent's temporary suspension.

*So ordered.*

---

before grand jury, and obstruction of justice are serious crimes concerned with lack of truthfulness and concluding that disbarment is only appropriate discipline).